Gary W. LUEBKE and Valentine A. Werner, Plaintiffs-Appellants,

v.

MILLER CONSULTING ENGINEERS, Defendant-Respondent,

ASSOCIATED BANK OF SHEBOYGAN, Defendant,

MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant-Third Party Plaintiff,

v.

Greg LASKA, David Tetschlag and Legacy Partners, Third Party Defendants.

Court of Appeals

No. 92-0391. *Oral argument December 12, 1992.—Decided January 27, 1993.*

(Also reported in 496 N.W.2d 753.)

On behalf of the plaintiffs-appellants, there were briefs and oral argument by *Richard J. Carlson*, of *Patterson, Jensen, Wylie, Silton & Seifert, S.C.*, of Appleton.

On behalf of the defendant-respondent, there were briefs by *John N. Gunderson* and *Jefren E. Olsen* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J. In this misrepresentation case, the trial court granted a directed verdict following the conclusion of the plaintiffs' case-in-chief after it determined that no *prima facie* case for damages had been made. Taking the evidence in a light most favorable to the plaintiffs, we reverse and hold that there is evidence of necessary expenses caused by the fraud. We further hold that under *Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 53, 288 N.W.2d 95, 112-13 (1980), such expenses are a proper measure of damages for fraudulent representation.

Where the trial court has granted a directed verdict, we review the facts in the light most favorable to the losing party. *Warren v. American Family Mut. Ins. Co.,* 122 Wis. 2d 381, 384, 361 N.W.2d 724, 726 (Ct. App. 1984). We recite the facts with that scope of review in mind. Greg Laska originally retained Miller Consulting Engineers (Miller) for services in connection with purchasing and developing certain property. Miller discovered and disclosed to Laska that the Wisconsin Department of Natural Resources (DNR) considered the property to be a "potential environmental hazard" and that the property was on a "list of potential clean-up sites." This was because of reports made to the DNR that hazardous substances had been dumped in the area. Miller attempted to get the DNR to "release" the property, but the DNR refused.

Laska, an agent for Mutual of New York (MONY), later confessed to converting funds of MONY customers for his own benefit. As restitution, Laska conveyed the property to MONY and MONY listed the property for sale. Miller had not been paid and recorded a lien on the

property. Gary W. Luebke and Valentine A. Werner (Luebke) became interested in the property and submitted an offer to purchase, which offer was subject to soil tests. Luebke hired and paid Miller mainly because Miller was already familiar with the property. Miller assured Luebke that there were no problems with the property and the soil testing contingency was removed. Luebke bought the property.

Luebke planned to develop an apartment complex, but was unable to obtain financing for the project. The property went into foreclosure, but M & I, the mortgage lender, stopped the foreclosure action when it learned that the property was on the DNR list. Instead, it brought a new action for a money judgment and recovered judgment against Luebke for $178,737.90.

Luebke sued Miller and tried claims for intentional deceit, strict responsibility or negligent misrepresentation before a jury.[1] In addition to proving the misrepresentation, Luebke had to prove damages. Regarding the damages, he attempted to put into evidence the facts necessary to allow an award under either of the two theories of recovery recognized in Wisconsin for intentional misrepresentation. In this state, the correct rule for damages in misrepresentation cases is the benefit of the bargain rule. *See Ollerman*, 94 Wis. 2d at 52-53, 288 N.W.2d at 112-13. Benefit of the bargain may be proven either by showing the difference between the value of the property as represented and its actual value when purchased or by showing out-of-pocket expenses. *Id.*

To show the value of the property as represented and its actual value when purchased, Luebke offered to

---

[1] Luebke also sued Associated Bank of Sheboygan and MONY. The suits against those parties were settled and are not pertinent to this appeal.

prove the following through an expert real estate consultant. The expert's opinion was that value means the "present worth as to its use or transfer." When the property is on an environmental hazard list of possible clean-up sites, there is a "risk of liability." Consequently, if a purchaser is given a choice, the purchaser will not buy the property. This makes the property unmarketable. The property will remain unmarketable depending on "remediation." If the property is unmarketable, it cannot be valued. Hence, it has no value.

Based upon this expert opinion, Luebke's theory of recovery was that the property, as represented, had a purchase price of $135,000. The actual value of the property is zero. Thus, the direct damages for Luebke were $135,000. In addition, Luebke claimed to suffer consequential damages in interest, real estate taxes, and fees paid to Miller for a total of $178,000.

Luebke's alternative theory of recovery was based upon the testimony of a DNR employee whose job is taking samples and scoring potential hazardous waste sites. This person testified that the property was part of the "Buteyn landfill." It was on the list of "potential clean-up sites." Once on the list, the property cannot be removed from the list. However, the property can be temporarily or permanently placed in an "inactive file." Only the federal Environmental Protection Agency (EPA) has the power to do this, although the DNR can recommend such action to the EPA. There is evidence from previous borings that the lot is part of the landfill and it is part of the solid waste disposal area. To determine if hazardous wastes actually exist on the lot, monitoring wells must be placed to determine whether there is any contamination release into the ground water. The cost of this investigation, in 1985 dollars, would be

between $35,000 and $50,000. Luebke sought this figure as an out-of-pocket expense.

The trial court did not allow the real estate expert to testify, but took his testimony in an offer of proof. The trial court allowed the DNR expert to testify. After Luebke rested his case, Miller moved for a directed verdict arguing that Luebke had not established damages. Regarding Luebke's zero value theory, Miller likened it to wanting damages for a potential broken leg. Miller pointed out that no one knows yet whether the property in question is actually contaminated. The only known facts are that the property was once a landfill and that it is on a potential clean-up list. Miller posited that the land may be free from contaminants and that the land could then be placed in the inactive file. Miller asserted that without a finding of contamination in the first instance, no one can arrive at a value. Miller concluded that it is too early to be able to arrive at a value for the property.

Regarding the alternative damage theory—the cost of investigation—Miller likened this theory to a lawsuit for the cost of finding out if there was an injury. Miller mainly argued that the injury was not established; first Luebke must prove that the land is bad. Only then can Luebke entertain a suit.

The trial court agreed that "maybe this case was brought too early." The trial court underscored the real estate expert's offer of proof when the expert testified that he could not arrive at a value because the property is presently unmarketable. The trial court understood the law to be that under one alternative for damages, there must be proof of the value as represented and proof of the value as is. Because a person would not be able to value this property until it was known whether there was contamination, the trial court ruled that there was no

factual basis to support an award based on the difference between value as represented and actual value.

Regarding the alternative theory—out-of-pocket investigation expense—the trial court did not state why there were no facts to support this theory. The trial court simply dismissed the case in total. However, at one time during the argument on the directed verdict motion, the court mentioned that the cost of investigation "has nothing to do with the benefit of the bargain." Upon dismissal, Luebke appealed.

Luebke's arguments on appeal parrot his assertions before the trial court. He claims that the offer of proof established the following. The property is on the list. The list creates a risk of liability for a potential buyer such that the property cannot be marketed until the risk is removed. If there is no marketability, then no value can be placed on the property. Without the ability to place a value, the property is valueless. If the property is valueless, then it has a zero value. Thus, there is evidence of both the represented value (the purchase price) and the actual value (zero). In the alternative, Luebke claims that the cost of investigation is a reasonable cost of placing the property in the condition that it was represented to be.

■

We will first address Luebke's claim that there is evidence showing the difference between the value as represented and its actual value when purchased. We agree with Miller that there is, as yet, no way of knowing the property's value. The property is on a list of "potential" hazardous waste clean-up sites. There was no evidence forthcoming as to whether the property would be marketable if it was later shown that there was a lack of hazardous waste on the property. Further, there was no evidence about what the effect would be on the prop-

erty's value if the property was placed on the EPA's inactive list. Finally, there was no evidence that the property was forever without value no matter what further investigation might reveal since, once on the list, no person would ever buy the property. To put it bluntly, without a determination on contamination, the value of the property is at this point speculative under the facts of this case.

There is another reason to reject this alternative benefit of the bargain theory at present. The purpose of the benefit of the bargain theory is to encourage reliable contracting by placing the nonbreaching party in the position it would have occupied had no breach occurred. *National Micrographics Sys. v. OCE-Industries*, 465 A.2d 862, 869 (Md. Ct. Spec. App. 1983). The converse must also be true; that is, the law should seek to protect against windfalls which might be gained by the non-breaching party. Were we to allow this alternative benefit of the bargain theory at this point, and were Luebke to prevail, he would not only recover the cost of his judgment plus his compensatory damages, but he would also keep the land. If it was later determined that the land was not contaminated, he might well have a valuable piece of property in addition to his damage award. Thus, he could reap a windfall. We will not allow for that possibility.

Regarding the alternative claim for out-of-pocket expense of investigation, however, we disagree with Miller and the trial court. As our supreme court made clear in *Ollerman*, an alternative measure of damages is to recover the reasonable cost of placing the property received in the condition in which it was represented to be. *Ollerman*, 94 Wis. 2d at 53, 288 N.W.2d at 112-13.

This is *not* limited to direct damage; that is, the compensation based on the difference between the real and represented value. The purchaser *may recover* for indirect or consequential damages caused by the misrepresentation *in addition to or in lieu of direct damages. Id.*

We construe this rule to mean that Luebke may recover for all of the detriment caused, which must include necessary expenses. *See Cory v. Villa Properties,* 225 Cal. Rptr. 628, 632 (Cal. Ct. App. 1986). Part of the necessary expense in trying to get the property in the condition it was represented to be is to commence with the investigation. Whether the investigation ultimately results in the property being found to be uncontaminated is not important at this juncture; what is important is that the cost of investigation is part of the cost of possible cure. It is right and proper that the defrauding party should have to pay for this investigation, not the victim. It is also proper for Luebke to claim any compensatory damages resulting from this claim.

In making this determination, we reject Miller's apparent complaint that the investigative cost is a happening which must occur prior to a claim for relief accruing. A claim for relief accrues when the following are known or apparent: that there has been a negligent act (the misrepresentation); that an injury has occurred (the property is on a list of possible contamination clean-up sites); the nature of the injury (the property is not marketable while on the list); the cause of the injury (the representation that the property was free from soil defects caused Luebke to buy); and the identity of the defendant (Miller). *See Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 404-05 n.2, 388 N.W.2d 140, 143 (1986). When a misrepresentation is made, it is important that the

defrauding party not benefit from it. *Any reasonable costs which are a result of the fraud should be the responsibility of the defrauding party.* The claim for reasonable costs to combat nonmarketability has accrued.

We are fully cognizant that the investigation may result in a conclusion that the property is indeed contaminated. Or, the property may be found to be uncontaminated, but the EPA will not remove the property from that active file. Or the EPA may remove the property from the active file, but the fact that the property was on the EPA list to begin with may have caused a permanent, negative effect on the value of the property. We do not reach whether Luebke would then have another claim for relief at that point by which he could seek benefit of the bargain damages. To do so would be to engage in *dicta.* We point out, however, that the reason for the difference between a claim for investigation expense and a claim for the difference between the property as represented and its actual value is precisely that in one case, the claim has accrued and in the other case, the claim has not accrued. The injury component of a claim for investigation costs is based on the assertion that the property is not *marketable.* A claim that the property's actual value is less than represented is based on an injury affecting the property's *value.* That claim has not accrued yet and may never accrue. We leave for the future the question of what claim might accrue following the investigation. We limit our holding to that action which has accrue—done for the necessary costs of investigating for contamination.

We reverse and remand for a new trial in which Luebke may present evidence regarding all costs of investigation in order to prove damages. Luebke may also present any evidence that he believes supports compensatory damages to that investigation. He may not, at

76

this time, pursue his benefit of the bargain theory where the jury would be asked to compare the value as represented and the value as is.[2]

*By the Court.*—Judgment reversed and remanded with directions.

---

[2] Luebke also argues that the trial court misused its discretion in allowing Miller certain latitude during cross-examination and that it misused its discretion in allowing a jury view. In light of our holding, we need not decide these issues.