Jay W. SMITH and Debra J. Smith, Plaintiffs,

WEST BEND MUTUAL INSURANCE COMPANY, Intervenor-
Plaintiff-Respondent,

v.

Paul KATZ, d/b/a Underroof Building and Design and
Robert L. Reisinger, Jr., Defendants,

Philip A. GIUFFRE, Defendant-Third-Party Plaintiff-
Appellant-Petitioner,

David A. and Mary A. STAWSKI, Third-Party
Defendants.

Supreme Court

*No. 96–1998. Oral argument January 6, 1999.—Decided June
22, 1999.*

(Also reported in 595 N.W.2d 345.)

For the defendant-third-party plaintiff-appellant-petitioner there were letter briefs by *Kent A. Tess-Mattner* and *Schmidt & Rupke, S.C.*, Brookfield and oral argument by *Kent A. Tess-Mattner*.

For the intervenor-plaintiff-respondent there was a letter brief by *Michael R. Vescio* and *Jeffrey Leavell, S.C.*, Racine and oral argument by *Jeffrey L. Leavell*.

¶ 1. DAVID T. PROSSER, J. This case is before the court because we granted Philip A. Giuffre's (Giuffre) motion for reconsideration of our decision in *Smith v. Katz*, 218 Wis. 2d 442, 578 N.W.2d 202 (1998). In the earlier decision, we affirmed an unpublished decision of the court of appeals[1] on grounds that Giuffre's insurance policy in the record did not cover the period in which alleged property damage occurred. When the record was amended to include a policy covering a later period, we granted Giuffre's motion for reconsideration.

¶ 2. The ultimate issue before the court is whether West Bend Mutual Insurance Company (West Bend) has a duty under the policies to defend and indemnify Giuffre for the claims made by Jay and Debra Smith (Smiths). We conclude that the claims against Giuffre in the Smiths' amended complaint do not constitute claims for property damage caused by an occurrence under the language of the West Bend policies and thus affirm the decision of the court of appeals.

---

[1] *Smith v. Katz*, No. 96–1998, unpublished slip op. (Wis. Ct. App. Aug. 12, 1997).

## FACTS

¶ 3. For purposes of this review, the facts are not in dispute. The Smiths purchased a vacant lot in Greenfield, Wisconsin, on July 19, 1991, from Giuffre for $29,000.00. In March of 1993, the Smiths hired Paul Katz d/b/a Underroof Building & Design (Katz) to construct a house on the lot. In preparing for construction, Katz excavated some soil and discovered underground springs. When Katz began to construct the foundation for the house, the foundation hole filled with water, causing the concrete foundation to collapse three or four times during construction. Eventually, the house was completed after delay and extra cost. The Smiths later complained during discovery that the pressure from ground water was pushing in and cracking the foundation walls and that there was cracking inside the house.

## PROCEDURAL HISTORY

¶ 4. The Smiths filed an action in Milwaukee County Circuit Court on April 19, 1995. The original complaint made four claims against Giuffre: (1) breach of warranty, (2) intentional misrepresentation, (3) strict responsibility misrepresentation, and (4) negligent misrepresentation. The complaint was later amended to include two additional defendants and three additional claims against them.[2] However, the claims against Giuffre were not amended.

---

[2] In their amended complaint, Jay and Debra Smith added allegations against Paul Katz d/b/a Underroof Building & Design (Katz) and Robert Reisinger. The Smiths alleged that Katz breached his contract with them because the construction of the house, including the foundation and grading, was not performed in a good and workmanlike manner. The Smiths also

¶ 5. On January 23, 1996, West Bend filed a motion to intervene, asserting that the allegations of the Smiths' complaint did not describe covered occurrences or damages that would trigger its duty to defend or indemnify Giuffre. West Bend thereafter sought a declaratory judgment that it had no duty to defend or indemnify under the policy.

¶ 6. On March 5, 1996, West Bend moved for summary judgment. First, West Bend argued that the Smiths' claims for damages were strictly pecuniary and economic in nature. The West Bend policy[3] defined "property damage" to mean "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." West Bend declared that the alleged pecuniary and economic damages were not "property damage" under the plain language of the policy.

¶ 7. Second, West Bend argued that there was no "occurrence" under the plain language of the policy. Under West Bend's policy, " '[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." West Bend asserted that misrepresentations made by a

---

alleged that Katz was negligent in failing to remedy apparent water problems and failing to properly construct and/or finish the house.

The Smiths alleged that Robert Reisinger, a consulting engineer, was careless and negligent in performing engineering services relative to the construction of the foundation of the house and the installation of a system for drainage of the underground springs and surface springs.

[3] The use of the singular word "policy" here reflects the single policy in the record at that point in the proceedings.

seller concerning the condition of property to be sold do not constitute an "occurrence" under Wisconsin law.

¶ 8. Third, West Bend argued that the policy did not provide coverage regarding the claim of "intentional" misrepresentation because the policy specifically excludes coverage for property damage "expected or intended" by the insured.

¶ 9. Finally, West Bend argued that even if property damage had been alleged under the policy, the "premises you sell" exclusion clause excluded coverage. The policy excluded coverage for " '[p]roperty damage' to. . .[p]remises you sell. . .if the 'property damage' arises out of any part of those premises. . . ." According to West Bend, the alleged damages arose from premises sold to the Smiths by Giuffre and thus the allegations were not covered under the plain language of the policy.

¶ 10. Giuffre countered that the court must look beyond the four corners of the Smiths' complaint because the complaint was ambiguous and evidence brought out in discovery showed that the Smiths were alleging physical injury to tangible property. In addition, Giuffre asserted that the property damage was caused by abnormally high ground water, a preexisting condition which was an "occurrence" under the policy.

¶ 11. A hearing on West Bend's motion for summary judgment was held on March 28, 1996. The circuit court, Jacqueline D. Schellinger, Judge, granted West Bend's motion. The court determined that based on the plain language of the policy there was no coverage or duty to defend against an intentional act. The court also concluded that the language in the policy excluding coverage for "[p]remises you sell, if the property damage arises out of any part of those premises," applied because the alleged property damage "arose

out of [the] premises. The part of [the] premises being the ground water."

¶ 12. Giuffre moved the circuit court to reconsider its decision. When the court denied the motion, Giuffre appealed.

¶ 13. In a per curiam opinion, the court of appeals affirmed the circuit court. Relying solely on the "premises you sell" exclusion, the court of appeals concluded there was no coverage under the policy. The court stated that "the damage to the home resulted from the ground water seeping or pressing against the Smiths' basement walls. This ground water was a part of the land that Giuffre sold to the Smiths. Therefore, the property damage to the Smiths' home arose out of 'any part of the premises sold.'" *Katz*, unpublished slip op. at 5–6.

¶ 14. This court granted Giuffre's petition for review. After hearing oral argument on April 7, 1998, we determined that the damage the Smiths complained of occurred sometime after March 23, 1993, but that the only insurance policy in the record provided coverage from September 1990 through September 1991. *Katz*, 218 Wis. 2d at 444. Accordingly, we remanded the case to the circuit court to determine whether Giuffre had another West Bend insurance policy for the period in question in 1993.

¶ 15. Giuffre then filed a motion with this court to amend the record to include a West Bend insurance policy in effect from September 12, 1992, through September 12, 1993. This court granted the motion and amended the record. We also granted Giuffre's motion for reconsideration which asked this court to decide the coverage issue now that we had proof of an effective policy at the time the damage occurred. As a result, we must determine whether West Bend has a duty to

defend and indemnify Giuffre under the policies now in the record for the claims filed by the Smiths.

## STANDARD OF REVIEW

¶ 16. In this case, we review a decision of the circuit court granting West Bend's motion for summary judgment. We review summary judgment rulings *de novo, Burkes v. Klauser,* 185 Wis. 2d 308, 327, 517 N.W.2d 503 (1994), applying the same methodology set out in Wis. Stat. § 802.08(2) as applied by the circuit court. *Green Springs Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Under § 802.08(2), a motion for summary judgment must be granted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[4]

¶ 17. In addition, we are called upon to interpret an insurance contract. Interpretation of an insurance contract is a question of law which this court reviews *de novo. Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987); *Katze v. Randolph & Scott Mut. Fire Ins. Co.,* 116 Wis. 2d 206, 212, 341 N.W.2d 689 (1984).

---

[4] Wisconsin Stat. § 802.08(2), provides:

The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

## ANALYSIS

¶ 18. When the court granted Giuffre's petition for review, we expected this case to present an opportunity to analyze and interpret the "premises you sell" exclusion clause in standard form commercial general liability insurance policies sold in Wisconsin. Both the circuit court and the court of appeals relied upon the "premises you sell" clause in awarding summary judgment to Giuffre's insurer. Upon close examination, however, we are convinced that Giuffre does not have coverage under his policies. Consequently, it is unnecessary and inappropriate to interpret the exclusion clause in circumstances where coverage does not exist.

¶ 19. An insurance agreement functions as a contract between the insured and the insurer. *City of Edgerton v. General Cas. Co. of Wis.*, 184 Wis. 2d 750, 764, 517 N.W.2d 463 (1994). Therefore, "[i]nterpretation of insurance policies is governed by the same rules of construction that apply to other contracts." *Donaldson v. Urban Land Interests, Inc.*, 211 Wis. 2d 224, 230, 564 N.W.2d 728 (1997).

¶ 20. An insurer's duty to defend its insured is determined by comparing the allegations of the complaint to the terms of the insurance policy. *School Dist. of Shorewood v. Wausau Ins. Co.*, 170 Wis. 2d 347, 364–65, 488 N.W.2d 82 (1992). In other words, "[t]he duty to defend is triggered by the allegations contained within the four corners of the complaint." *Newhouse v. Citizens Security Mut. Ins. Co.*, 176 Wis. 2d 824, 835, 501 N.W.2d 1 (1993) (citing *Elliot v. Donahue*, 169 Wis. 2d 310, 320–21, 485 N.W.2d 403 (1992); *Grieb v. Citizens Casualty Co.*, 33 Wis. 2d 552, 557–58, 148 N.W.2d 103 (1967)). The duty to defend focuses on the nature of the claim and has nothing to do with the merits of the claim. *Grieb*, 33 Wis. 2d at 558. As a result, the insurer

may have no duty to defend a claim that ultimately proves meritorious against the insured because there is no coverage for that claim. Conversely, the insurer may have a clear duty to defend a claim that is utterly specious because, if it were meritorious, it would be covered. The insurer's duty arises when the allegations in the complaint coincide with the coverage provided by the policy.

¶ 21. It is important to remember that "a contract of insurance is not to be rewritten by the court to bind an insurer to a risk which the insurer did not contemplate and for which it has not been paid." *Qualman v. Bruckmoser*, 163 Wis. 2d 361, 365, 471 N.W.2d 282 (Ct. App. 1991) (citing *Wisconsin Builders, Inc. v. General Ins. Co. of Am.*, 65 Wis. 2d 91, 103, 221 N.W.2d 832 (1974)).

¶ 22. There are two West Bend policies in the record. Each contains similar coverage terms. The first policy ran from September 12, 1990, to September 12, 1991. The second policy ran from September 12, 1992, to September 12, 1993. There is a third policy - between the other two - but that policy is not part of the record. We assume that West Bend provided Giuffre with continuous general liability coverage which was derived from three separate consecutive policies. In interpreting these policies, we recognize that Giuffre could have selected a different insurer beginning September 12, 1991, and West Bend could have first become Giuffre's insurer on September 12, 1992.

¶ 23. The policies in the record read, in part, as follows:

SECTION 1 - COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. . . .

 b. This insurance applies to "bodily injury" and "property damage" only if:

 1. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

 2. The "bodily injury" or "property damage" occurs during the policy period.

SECTION V - DEFINITIONS

. . .

 9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

 12. "Property damage" means:

 a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use

808

shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

¶ 24. Each policy promises to pay Giuffre those sums he is legally obligated to pay as damages because of property damage that is caused by an occurrence when the property damage occurs during the policy period.

¶ 25. When this case was last before the court, we noted that "Giuffre's counsel does not dispute that the alleged property damage took place after the construction of the home began in March of 1993." *Katz*, 218 Wis. 2d at 450.

¶ 26. Giuffre's burden in this case, given the terms of the policies, is to demonstrate that the Smiths' complaint against Giuffre alleged (1) there was property damage as defined in the policies; (2) Giuffre's conduct, *i.e.*, his alleged misrepresentations, constituted an "occurrence" as defined in the policy; and (3) the property damage alleged was *caused* by Giuffre's conduct.

¶ 27. In their amended complaint, the Smiths alleged four claims against Giuffre: (1) breach of warranty; (2) intentional misrepresentation; (3) strict responsibility misrepresentation; and (4) negligent misrepresentation. The intentional misrepresentation

claim is not involved in this appeal.[5] The other three claims were set out, in part, as follows:

## FIRST CLAIM AGAINST DEFENDANT GIUFFRE

## BREACH OF WARRANTY

. . .

8. Under the terms of the offer to purchase, defendant made certain warranties as to the condition of the vacant lot.

9. Defendant breached such warranties and as a result, plaintiffs sustained damages.

. . .

11. Prior to and at the time of sale of the vacant lot by defendant to plaintiffs, defendant made certain representations as to the condition of the lot and/or failed to disclose to plaintiffs certain defects and conditions of the vacant lot. Specifically, defendant failed to disclose the existence of underground and surface springs and water problems which had existed for many years on the vacant lot and existed as of the date of the offer to purchase and the closing of the real estate transaction. . . .

. . .

---

[5] The circuit court determined that coverage for the Smiths' allegation of intentional misrepresentation was barred by the "intentional acts" exclusion in the West Bend policy. Giuffre did not challenge that determination before the court of appeals or this court. Therefore, that allegation will not be addressed.

## THIRD CLAIM AGAINST DEFENDANT GIUFFRE

## STRICT RESPONSIBILITY MISREPRESENTATION

. . .

21. By virtue of defendant's representations and/or omissions to plaintiffs as to the true condition of the vacant lot, and plaintiffs' purchase of the vacant lot, defendant was in a position whereby he would tend to make a financial gain if plaintiffs entered into the transaction. In fact, defendant did financially benefit and gain as a result of the sale of the vacant lot to plaintiffs.

22. Plaintiffs relied upon the representations made by defendant and/or the omissions of material fact as to the true condition of the vacant lot, and in such reliance, plaintiffs executed the offer to purchase, agreed to close the transaction and in fact closed the transaction for the purpose of the vacant lot.

23. As a result of defendant's misrepresentations and omissions of fact, plaintiffs have sustained damages.

## FOURTH CLAIM AGAINST DEFENDANT GIUF-FRE

## NEGLIGENT MISREPRESENTATION

. . .

25. Defendant's representations and/or omissions of fact as set forth in the first, second, and third claims were and are false and untrue, defendant knew or should have known the true condition of the vacant lot, and defendant negligently made untrue representations and/or negligently omitted

811

material facts as to the true condition of the vacant lot.

26. Plaintiffs believed such representations by defendant to be true and relied upon such representations or omissions by executing the offer to purchase, agreeing to close the transaction, and in fact closing the transaction to purchase the vacant lot.

27. As a result of defendant's negligent misrepresentation and omissions of fact, plaintiffs have sustained damage.

## PROPERTY DAMAGE

¶ 28. Nowhere in the first four counts of the amended complaint did the Smiths explicitly allege "property damage." Under Breach of Warranty, they claimed they "sustained damages." Under Strict Responsibility Misrepresentation, they claimed they "have sustained damages." Under Negligent Misrepresentation, they claimed that "plaintiffs have sustained damages." Under the Intentional Misrepresentation count that was dismissed against West Bend, the plaintiffs claimed in Paragraph 15 that "Defendant's representations and/or omissions to plaintiffs were made with intent to deceive. . .*all to the plaintiffs' pecuniary damages.*" (emphasis supplied).

¶ 29. West Bend maintains that misrepresentations about property, whether they be intentional, strict responsibility, or negligent, cannot produce "property damage" within the terms of the policy. Rather, misrepresentations produce economic losses or pecuniary damages. West Bend cites *Benjamin v. Dohm*, 189 Wis. 2d 352, 360–61, 525 N.W.2d 371 (Ct. App. 1994), where the court discussed negligent misrepresentation and strict responsibility

misrepresentation which had allegedly occurred during a closing. The court said:

> Strict responsibility misrepresentation provides a purchaser with the measure of damages representing the difference between the fair market value of the property in the condition when purchased and the fair market value of the property as it was represented, or the benefit of the bargain. *Luebke v. Miller Consulting Eng'rs,* 174 Wis. 2d 66, 70–71, 496 N.W.2d 753, 755 (Ct. App. 1993). The measure of damages awarded to a party who successfully litigates a claim for negligent misrepresentation is the difference between the fair market value of the property at the time of the sale and the amount actually paid, or the out-of-pocket rule. *Gyldenvand v. Schroeder,* 90 Wis. 2d 690, 697–98, 280 N.W.2d 235, 239 (1979).

The court concluded that the damages alleged in a claim for misrepresentation are for *economic loss* and are pecuniary in nature and do not constitute property damage within the terms of a standard liability policy.[6] *Id.*

¶ 30. In its opinion, the *Benjamin* court relied on *Qualman v. Bruckmoser,* 163 Wis. 2d 361, 471 N.W.2d 282 (Ct. App 1991), where the Qualmans alleged that they had suffered pecuniary damages but the Bruckmosers had a policy which afforded coverage for property damage, defined as "injury to or destruction of

---

[6] *See also* WI JI-CIVIL, 2405.5 STRICT RESPONSIBILITY: MEASURE OF DAMAGES IN ACTIONS INVOLVING SALE OF PROPERTY (BENEFIT OF THE BARGAIN) and 2406 NEGLIGENT MISREPRESENTATION: MEASURE OF DAMAGES INVOLVING SALE OF PROPERTY (OUT OF POCKET RULE).

tangible property, including the loss of its use."
*Qualman*, 163 Wis. 2d at 366. The court said:

> Property damage within the meaning of the policy is not alleged. There is no coverage in the policy for the pecuniary loss the Qualmans do allege. Thus, American Family has no duty to defend.

*Id.* at 366.

¶ 31. The record in *Qualman* shows that the Qualmans' amended complaint makes repeated references to the physical damage they found in their newly-acquired property such as "cracked basement walls and defective kitchen pipes." But the complaint ends each count with an allegation such as "the plaintiffs have incurred substantial money damages" or "the plaintiffs have suffered pecuniary damages." The Qualmans ultimately demanded "the difference in value between the property as represented and its actual value. . . ." A fair reading of that complaint leaves little doubt that misrepresentation was the theory of recovery, and the court said, "Simply because the underlying facts deal with defects in the property sold does not change the nature of the claim asserted by the Qualmans against the Bruckmosers. Nor does it change the risks the policy insured against." *Id.* at 367.

¶ 32. In this case, the first four counts of the complaint did not contain any factual allegations about the condition of the Smiths' house. There were two references to the existence of underground and surface springs (paragraphs 11 and 17) embodied in the four counts against Giuffre; but there were no allegations in those counts that the underground springs caused problems with the Smiths' house. In fact, there was no reference in the first four counts to the fact that the Smiths had built a house. The only count that mentions

the underground springs was the count that referred to "pecuniary damages."

¶ 33. In the sixth count of the amended complaint involving another party, Paul Katz d/b/a Underroof Building & Design, the Smiths made allegations about Katz's work constructing the house: "When defendant [Katz] began to construct the foundation, the entire foundation hole filled up with water and the foundation kept collapsing and collapsed three or four times. Notwithstanding having knowledge of the water problems and the existence of surface and underground springs, defendant. . .was careless and negligent in failing to remedy such water problems and failing to properly construct and/or finish the house."

¶ 34. In six of the seven counts of the complaint, the plaintiffs claimed they sustained "damages." In one count against Giuffre, they referred to "pecuniary damages." To sum up, there were fewer factual allusions to property damage in the present complaint than in the Qualmans' complaint. There was no claim of physical injury to tangible property or loss of use of property because of Giuffre. But the repeated reference to "damages" in the complaint was more ambiguous than the specific "monetary" and "pecuniary" damages claimed in *Qualman,* so that the term is more subject to construction than the language in the *Qualman* complaint.

¶ 35. Recently, in *Doyle v. Engelke,* 219 Wis. 2d 277, 284, 580 N.W.2d 245 (1998) (citing *Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.,* 191 Wis. 2d 229, 241–42, 528 N.W.2d 486 (Ct. App. 1995)), this court reiterated that, in examining the allegations of a complaint in relation to the terms of the disputed insurance policy, we "liberally construe those allegations and assume all reasonable inferences." But the court point-

edly rejected an invitation to go beyond the four corners of the complaint saying: "[T]he language of [*Berg v. Fall*, 138 Wis. 2d 115, 405 N.W.2d 701 (Ct. App. 1987)], indicating that courts may be allowed to go beyond the four corners of a complaint when determining whether coverage exists. . .is. . .contrary to a long line of cases in this state which indicate that courts are to make conclusions on coverage issues based solely on the allegations within the complaint." *Doyle*, 219 Wis. 2d at 284 n.3.

¶ 36. Applying a liberal construction to the Smiths' complaint, we believe the allegations may be viewed as alleging "property damage" against Katz and Reisinger because reasonable inferences of property damage may be drawn from the allegations about the house. But it is not reasonable to draw inferences about property damage from the allegations made against Giuffre. It cannot be said that the amended complaint, written more than four years after Giuffre sold the Smiths a vacant lot, gives Giuffre's insurer fair notice that the claims, based on Giuffre's alleged misrepresentations, involved physical injury to tangible property. *Cf. Hertlein v. Huchthausen*, 133 Wis. 2d 67, 393 N.W.2d 299 (Ct. App. 1986).

¶ 37. We are not saying that strict responsibility misrepresentations or negligent misrepresentations can *never* cause "property damage" as defined in the policies, particularly when "property damage" can include "loss of use of tangible property that is not physically injured." *Cf. Sola Basic Indus. Inc. v. United States Fidelity & Guar. Co.*, 90 Wis. 2d 641, 280 N.W.2d 211 (1979). But we recognize that the majority view in the cases is that misrepresentations and omis-

sions do not produce "property damage" as defined in insurance policies. They produce economic damage.[7]

¶ 38. Given this well established law, a complaint claiming strict responsibility misrepresentation or negligent misrepresentation must contain some statement about physical injury to tangible property, some reference to loss of use, or some demand for relief beyond money damages if the complaint is to satisfy the requirement that "property damage" be alleged within the four corners of the complaint.[8]

¶ 39. We conclude that the Smiths' complaint did not create a duty to defend because it did not explicitly or implicitly allege that Giuffre's purported misrepresentations caused "property damage" within the meaning of the policies. The complaint did not provide fair notice to the insurer that the misrepresentation

[7] See Safeco Ins. Co. of America v. Andrews, 915 F.2d 500, 502 (9th Cir. 1990); Hamilton Die Cast, Inc. v. United States Fidelity & Guar. Co., 508 F.2d 417 (7th Cir. 1975); Allstate Ins. Co. v. Morgan, 806 F. Supp. 1460, 1464–65 (N.D. Cal. 1992); Allstate Ins. Co. v. Chaney, 804 F. Supp. 1219, 1222 (N.D. Cal. 1992); Allstate Ins. Co. v. Hansten, 765 F. Supp. 614, 616 (N.D. Cal. 1991); Liberty Mut. Ins. Co. v. Consolidated Milk Producers' Ass'n., 354 F. Supp. 879 (D.N.H. 1973); Devin v. United Services Automobile Assoc., 6 Cal. App. 4th 1149, 1158, 8 Cal. Rptr. 2d 263, 269 (Cal. 1992); Giddings v. Industrial Indem. Co., 112 Cal. App. 3d 213, 219, 169 Cal. Rptr. 278, 281 (Cal. Ct. App. 1980); Hartford Accident & Indem. Co. v. Case Found. Co., 294 N.E.2d 7, 13–14 (Ill. App. Ct. 1973); Dixon v. National American Ins. Co., 411 N.W.2d 32, 33–34 (Minn. Ct. App. 1987); and State Farm Lloyds and State Farm Fire and Casualty Co. v. Kessler, 932 S.W.2d 732, 737 (Tex. Ct. App. 1996). These cases support the holdings in Benjamin and Qualman.

[8] If the plaintiff demands punitive damages, that demand may suggest that the misrepresentation was not an "accident."

claims were not to be treated the same as any ordinary misrepresentation claims. A differently worded complaint might have permitted different inferences and yielded a different result.

## OCCURRENCE

¶ 40. If, for the sake of argument, we were to assume that the Smiths' complaint did properly claim property damage with "physical injury to tangible property," Giuffre would still have to prove both "occurrence" and causation.

¶ 41. In *Benjamin v. Dohm*, 189 Wis. 2d 352, the court was faced with a situation quite similar to the situation here. The defendant, Dohm, sold buildings and land to be converted into condominiums. *Id.* at 357. The structures were built on a landfill and the buildings settled. *Id.* Benjamin sued Dohm for negligent misrepresentation and strict responsibility misrepresentation alleging damages for loss of uninhabitable units which had to be demolished, loss of past rental income, costs to tear down the units, past carrying costs of units, real estate taxes on the units, lost sale proceeds, loss of original partner capital contributions, loss of value of the entire project, and loss of anticipated profits from the project. *Id.*

¶ 42. The *Benjamin* court not only disavowed the existence of "property damage" but also held that even if property damage and loss of use were claimed in the complaint, coverage still did not exist because the property damage was not *caused by an occurrence. Id.* at 363–65. The court noted that the policy provided coverage for two kinds of property damage: (1) actual physical injury to tangible property and the loss of use thereof, and (2) loss of use of tangible property not physically injured or destroyed. *Id.* at 362–63. The

court observed that under either definition of property damage, the property damage had to be caused by an occurrence. *Id.* at 363. The court ultimately held that there was no coverage under either definition of property damage because the property damage or resulting loss of use was caused by structural defects and not the alleged misrepresentations. *Id.* at 365.

¶ 43. In addition to property damage, Giuffre must establish that there was an "occurrence" and that the occurrence caused the property damage. The occurrence must have some relationship to the insured in order to create a duty for the insurer. Giuffre contends that the occurrence here was his alleged negligent misrepresentation to the Smiths. "West Bend cannot dispute that a 'negligent misrepresentation' or a negligent failure to disclose a material fact is a 'mishap' or 'chance event.' " Petitioner's Brief at 30.

¶ 44. Giuffre relies on *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540 (Md. 1996), for the proposition that negligent misrepresentation can serve as an occurrence within the meaning of a general liability insurance policy. In *Sheets*, a Maryland couple sold their farmhouse to a family with nine children. The buyers claimed that the sellers had negligently represented that the septic system in the farmhouse was in good working condition. The buyers alleged that shortly after they took possession, the septic system began leaking and flooding an area near the house, whereupon it was condemned by a government agency and had to be replaced.

¶ 45. On the question whether negligent misrepresentation constituted an "occurrence" or "accident" for purposes of insurance, the court said: "Negligent misrepresentation is a form of negligence." *Sheets*, 679 A.2d at 546. The court then held that, in Maryland, an

act of negligence constitutes an "accident" under a liability insurance policy when the resulting damage was an event that takes place without the insured's foresight or expectation. *Id.* at 548. The court went on to observe:

> Just as courts are divided on the issue of whether negligence in general is an accident, courts are similarly split on the question of whether negligent misrepresentation constitutes an accident.

*Id.* at 550.

¶ 46. The Maryland court cited *SL Industries v. American Motorists Ins. Co.*, 607 A.2d 1266, 1276–77 (N.J. 1992); *Universal Underwriters Ins. Co. v. Youngblood*, 549 So. 2d 76, 79 (Ala. 1989); and *First Newton Nat. Bank v. Gen. Casualty Co.*, 426 N.W.2d 618, 625 (Iowa 1988), as cases recognizing that negligent misrepresentation can be an occurrence or accident. *Sheets*, 679 A.2d at 551. Then it said:

> We prefer to follow those cases that treat negligent misrepresentation like other forms of negligence, which are covered as accidents if the insured did not expect or foresee the resulting damage. In accordance with our own precedent outlined above, the ultimate inquiry is whether the resulting damage is "an event that takes place without one's foresight or expectation."

*Id.*

¶ 47. Several courts applying Wisconsin law have recognized that negligence can be an "accident" or "occurrence." In *Doyle*, for example, we held that a reasonable insured would expect an insurance policy provision defining "event" to include negligent acts. *Doyle*, 219 Wis. 2d at 289–90. The policy had defined

"event" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"–the same definition as "occurrence" in Giuffre's policy. Speaking for the court, Justice Bradley wrote:

> [W]e discover that "accident" is defined as "[a]n unexpected, undesirable event" or "an unforeseen incident" which is characterized by a "lack of intention." *The American Heritage Dictionary of the English Language* 11 (3rd ed. 1992).

> It is significant that both definitions center on an unintentional occurrence leading to undesirable results. As we have recognized in the past, comprehensive general liability policies are "designed to protect an insured against liability for negligent acts resulting in damage to third parties." *General Cas. Co. of Wisconsin v. Hills*, 209 Wis. 2d 167, 183–84, 561 N.W.2d 718 (1997) (quoting Arnold P. Anderson, *Wisconsin Insurance Law* § 5.14, at 136 (3rd ed. 1990 and Supp. 1997)). Accordingly, we have little trouble concluding that a reasonable insured would expect the Policy provision defining "event" to include negligent acts.

*Doyle*, 219 Wis. 2d at 289–90. *See also Lund v. American Motorists Ins. Co.*, 797 F.2d 544, 547–48 (7th Cir. 1986); *Koehring Co. v. American Automobile Ins. Co.*, 353 F.2d 993, 996 (7th Cir. 1965); *Engsberg v. Town of Milford*, 597 F. Supp. 251, 255 (W.D. Wis. 1984). In *Engsberg*, United States District Judge John Shabaz wrote: "Clearly. . .allegations of gross negligence, if proved, fall within the coverage of the policy as leading to an occurrence and [Tower Insurance Company's] duty to defend the Town is thereby triggered." *Engsberg*, 597 F. Supp. at 255.

¶ 48. The negligence analysis in *Doyle* is strikingly similar to the negligence analysis in *Sheets*. The decisions on negligence will require this court to decide, at some future date, whether strict responsibility misrepresentation and/or negligent misrepresentation are sufficiently similar to other kinds of negligence to categorize them as "accidents" in liability insurance policies, or whether these torts are sufficiently different from other kinds of negligence to preclude their categorization as "accidents." *See Sheets*, 679 A.2d at 552–553 (Karwacki, J., dissenting).

## CAUSATION

¶ 49. We will be more definitive about causation. If we assumed, without deciding, that strict responsibility misrepresentation or negligent misrepresentation represented an "occurrence" within the terms of West Bend's policies, and that the Smiths' complaint adequately alleged that the Smiths had suffered physical injury to their tangible property, Giuffre would not be entitled to coverage because the requisite element of causation is not present.

¶ 50. In *Benjamin*, the court of appeals said that none of Benjamin's property damage in the condominiums was *caused* by Dohm's negligent misrepresentation. All of it was *caused* by structural defects. "There is no 'causation nexus.' " *Benjamin*, 189 Wis. 2d at 365. In *Qualman*, the court likewise stated:

> There is no question that the defective condition of the house is an element in the Qualmans' complaint. Nevertheless, those defects cannot be considered the *cause* of the Qualmans' damages, even when interpreting both the complaint and the policy broadly.

*Qualman,* 163 Wis. 2d at 367–68 (emphasis in original).

¶ 51. The lack of a "causation nexus" recognized by the court of appeals in *Benjamin* is also apparent in this case. When determining whether alleged property damage was caused by an occurrence, a reviewing court must look at the alleged misconduct and determine whether a "causation nexus" exists between the alleged misconduct and the damage claimed. Without such a "causation nexus," the alleged occurrence cannot cause property damage.

¶ 52. There are several reasons why Giuffre's alleged misrepresentations did not *cause* physical injury to the Smiths' property. Any alleged misrepresentations occurred about July 19, 1991. There was no physical injury to tangible property until after March of 1993. In the interim, ownership and control of the vacant lot changed hands. The Smiths not only decided to build a house but also decided where on the lot the house should be located. They selected Paul Katz and Robert Reisinger to assist them. Someone other than Philip Giuffre decided to continue building the house in the same spot even after its concrete foundation collapsed three or four times.

¶ 53. The Smiths allege negligence on the part of Katz and Reisinger, and this provides evidence that Giuffre's alleged misrepresentations did not *cause* property damage. In the complaint, the Smiths alleged: "Notwithstanding having knowledge of the water problems and the existence of surface and underground springs, defendant [Katz] was careless and negligent in failing to remedy such water problems and failing to properly construct and/or finish the house." The alleged negligence of the builder did not create a duty on the part of West Bend to defend Giuffre.

¶ 54. In *Welter v. Singer*, 126 Wis. 2d 242, 250, 376 N.W.2d 84 (Ct. App. 1985), the court wrote:

> The Wisconsin Supreme Court, in *Olsen v. Moore*, [56 Wis. 2d 340, 202 N.W.2d 236 (1972)], joined the majority of jurisdictions by adopting the "cause" analysis. That is, where a single, uninterrupted cause results in all of the injuries and damage, there is but one "accident" or "occurrence." If the cause is interrupted or replaced by another cause, the chain of causation is broken and there has been more than one accident or occurrence.

██

¶ 55. There is no "causation nexus" in the Smiths' complaint because negligent misrepresentations do not cause ground water pressure or cracks in concrete foundations, and because there have been too many "interruptions" between the "occurrence" and the "property damage"–too many decisions and actions by other people–to show an unbroken chain of causation under the policies.

## GROUND WATER AS AN OCCURRENCE

¶ 56. Giuffre also argues that "the 'occurrence' causing the plaintiffs' damages can be the excessive groundwater on the lot, not just the alleged misrepresentations." He asserts that testimony by an expert hydrogeologist established that the damages alleged by the Smiths were caused by an occurrence because the ground water conditions acting on the foundation wall were "continuous or repeated exposure to substantially the same general harmful conditions." This statement virtually concedes that the misrepresentations did not cause the alleged damage. Instead, the above statement contends that ground water conditions acting on

the foundation wall were the occurrence which caused the alleged damage.

¶ 57. Giuffre's argument that ground water conditions should also be considered an occurrence which caused the alleged property damage and made him eligible for coverage is misplaced. As stated above, an insurer's duty to defend its insured is determined by comparing the allegations contained within the four corners of the complaint with the terms of the insurance policy. *School Dist. of Shorewood*, 170 Wis. 2d at 364–65; *Newhouse*, 176 Wis. 2d at 835. The Smiths allege that "[a]s a result of defendant's misrepresentations and omissions of fact, plaintiffs have sustained damages." Looking at the allegations contained in the four corners of the complaint, the Smiths allege that the misrepresentations caused the damage, not the ground water conditions as set forth in an evidentiary affidavit by their expert hydrogeologist.

¶ 58. In sum, we conclude that the Smiths' complaint did not allege that Giuffre had caused "property damage" within the language of Giuffre's policies. Moreover, the Smiths' allegations of strict responsibility misrepresentation and negligent misrepresentation, if true, did not "cause" property damage within the language of the policy because there was no causal nexus between the alleged occurrence and the alleged property damage. On these facts, West Bend had no duty to defend or indemnify Philip Giuffre.

*By the Court.*—The decision of the court of appeals is affirmed.