ESTATE OF James B. SUSTACHE,
by its Special Administrator, James Sustache,
and Antoinette Sustache, Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Respondent,

Carrie A. ROMAN, Defendant,

Larry MATHEWS and Jeffrey W. Mathews,
Defendants-Appellants-Petitioners.

Supreme Court of Wisconsin

*No. 2006AP939. Oral argument February 29, 2008.
—Decided July 10, 2008.*

2008 WI 87

(Also reported in 751 N.W.2d 845.)

For the defendants-appellants-petitioners there were briefs by *John V. O'Connor* and *O'Connor, Dumez, Alia & McTernan, S.C.,* Kenosha, and oral argument by *John V. O'Connor.*

For the defendant-respondent there was a brief by *Terry J. Booth* and *Piper & Schmidt,* Milwaukee, and oral argument by *Terry J. Booth.*

An amicus curiae brief was filed by *James A. Friedman, Katherine Stadler,* and *Godfrey & Kahn, S.C.,* Madison, on behalf of the Wisconsin Insurance Alliance.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals,[1] which affirmed an order of the Kenosha County Circuit Court, Wilbur W. Warren III, Judge.

¶ 2. In this insurance coverage dispute, the circuit court entered summary judgment dismissing defendant

---

[1] *Estate of Sustache v. Am. Family Mut. Ins. Co.,* 2007 WI App 144, 303 Wis. 2d 714, 735 N.W.2d 186.

American Family Mutual Insurance Company (American Family), which insured, under separate policies: (1) defendants Larry Mathews (Mathews) and Jeffrey W. Mathews (Jeffrey),[2] and (2) defendant Carrie A. Roman (Roman). American Family provided an initial defense to the Mathewses and Roman under a reservation of rights and moved to stay the proceeding on liability until the issue of coverage was resolved. In this review, only the dismissal of American Family with respect to the defense of the Mathewses is before us.

¶ 3. The issue presented is whether an insurer has a duty to defend an insured, under the liability coverage provisions of a homeowner's insurance policy, when the plaintiffs' complaint asserts that the insured "without warning or provocation, punched decedent out, causing him to fall into a curb thereby causing serious injuries and ultimately death," leading to a count of "battery . . . by intentionally causing bodily harm . . . thereby causing decedent's death." Relying on *Berg v. Fall*, 138 Wis. 2d 115, 405 N.W.2d 701 (Ct. App. 1987), the Mathewses contend that Jeffrey's affirmative defense of self-defense requires the insurer to look beyond the four corners of the complaint to continue to provide a defense.

¶ 4. After carefully considering the facts and circumstances of this case, especially the allegations of the complaint and the pertinent homeowner's policy, we conclude that the Mathewses' homeowner's policy does not provide coverage for the plaintiffs' claims. Consequently, American Family has no duty to continue to defend the Mathewses. Accordingly, we affirm the court of appeals.

[2] Defendants Larry Mathews and Jeffrey W. Mathews will be referred to collectively as "the Mathewses."

## I. BACKGROUND

¶ 5. James B. Sustache (Sustache) died from injuries sustained after an altercation at an underage drinking party hosted by Roman and her minor son, Anthony Fuller. During this altercation, Jeffrey punched Sustache in the face, causing him to fall to the curb and sustain severe injuries that ultimately led to his death. The altercation stemmed from events earlier that evening when "a number of [party attendees] started calling [Jeffrey] on his cell phone," harassing and goading him to "come over to the party to engage in a fight with [Sustache]." There is no dispute that Jeffrey intended to strike Sustache; there is also no dispute that Jeffrey did not intend his blow to be fatal.[3]

¶ 6. Sustache's estate and his parents, James and Antionette Sustache, sued Jeffrey, Mathews, Roman, and American Family, which had issued separate homeowner's insurance policies to Roman and Mathews. The plaintiffs' first amended complaint alleged five causes of action, four of which relate to the defendants participating in this appeal.[4] Count 2 alleged that Jeffrey negligently failed to inquire into the true source of the phone calls before striking Sustache. Count 3 alleged that "[Jeffrey] committed battery without provocation by intentionally causing bodily harm to

---

[3] The record is silent regarding whether Jeffrey was criminally charged for the incident. Counsel for the Mathewses indicated at oral argument that Jeffrey has not been criminally charged.

[4] Count 1 of the plaintiffs' first amended complaint alleges that Roman was negligent per se for violating Wis. Stat. § 125.07 by failing to take action to prevent the illegal consumption of alcohol beverages by underage persons on premises owned or under her control. The circuit court granted summary judgment to American Family on this count.

[Sustache] without [his] consent thereby causing [his] death." Count 4 sought to hold Mathews vicariously liable for Jeffrey's "willful, malicious and wanton" acts pursuant to Wis. Stat. § 895.035.[5] Count 5 sought punitive damages for Jeffrey's "willful, wanton and malicious" acts.[6]

¶ 7. Although the plaintiffs' opening complaint did not identify American Family as the Mathewses' insurer, American Family provided a defense under a reservation of rights. The assigned attorney filed an answer to the plaintiffs' first amended complaint denying all allegations against the Mathewses and affirmatively defending, in part, on the ground that Jeffrey acted in self-defense.

¶ 8. The Mathewses' American Family homeowner's policy provides personal liability coverage for an "insured," which includes both Mathews and Jeffrey. Specifically, the policy states: "We will pay, up to our

---

[5] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

Wisconsin Stat. § 895.035(2)(a) provides in pertinent part: "The parent or parents with custody of a minor child, in any circumstances where he, she, or they may not be liable under the common law, are liable . . . for personal injury attributable to a willful, malicious, or wanton act of the child."

[6] To resolve this appeal, we need to consider only Count 3. Roman has not appealed, thereby eliminating the need to consider Count 1. The plaintiffs conceded below that Count 2 fails to give rise to coverage. We need not consider Count 4 because it involves the vicarious liability of Mathews, which hinges upon our determination of coverage under Count 3. Furthermore, the American Family policy unambiguously excludes coverage for imputed liability. Finally, Count 5 is also unambiguously excluded from coverage, and the Mathewses failed to rebut American Family's argument to that effect on summary judgment.

limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy."

¶ 9. The policy defines "occurrence" as "an accident, including exposure to conditions, which results during the policy period, in: a. bodily injury; or b. property damage." The term "accident" is not defined in the policy.

¶ 10. The policy enumerates the following exclusions from coverage:

> 8. Illegal Consumption of Alcohol. We will not cover bodily injury or property damage arising out of the insured's knowingly permitting or failing to take action to prevent the illegal consumption of alcohol beverages by an underage person.

> 9. Imputed Liability. We will not cover bodily injury or property damage arising out of any liability imputed to any insured which is otherwise excluded in this policy.

> 10. Intentional Injury. We will not cover bodily injury or property damage caused intentionally by or at the direction of any insured even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of any insured.

The policy also provides that personal liability coverage does not extend to punitive damages.

¶ 11. The policy includes a defense provision that also references an "occurrence." The defense provision states:

> Defense Provision.

> If a suit is brought against any insured for damages because of bodily injury or property damage caused by

556

an occurrence *to which this policy applies,* we will provide a defense at our expense by counsel of our choice. We will defend any suit or settle any claim for damages payable under this policy as we think proper. (Emphasis added.)

¶ 12. On December 27, 2005, American Family moved for summary judgment on the grounds that its policy did not cover the plaintiffs' claims and that it had no duty to continue to defend the Mathewses because: (1) the plaintiffs' damages were not caused by an "occurrence" covered under the policy; (2) the policy expressly excluded coverage for punitive damages; (3) the policy expressly excluded coverage for imputed liability—such as vicarious liability under Wis. Stat. § 895.035—"which is otherwise excluded in th[e] policy"; and (4) the policy expressly excluded coverage for intentional injury. American Family asserted that the four-corners rule, which provides that an insurer's duty to defend is determined solely on the allegations in the complaint, not extrinsic facts, precluded any inquiry into Jeffrey's self-defense claim.

¶ 13. The Mathewses opposed American Family's motion by relying upon the court of appeals' opinion in *Berg,* which carved out an exception to the four-corners rule in a situation where the insured's claim of self-defense renders an intentional acts exclusion ambiguous. *Berg,* 138 Wis. 2d at 120–21. American Family responded that *Berg* does not apply because the policy language at issue here differs significantly from that in *Berg.* American Family also asserted that *Berg* contradicted the four-corners rule of earlier supreme court decisions and that subsequent supreme court decisions had undermined *Berg*'s continuing validity.

¶ 14. While acknowledging the similarities between *Berg* and the case at bar, the circuit court

concluded that the four-corners rule "has been well settled law in the State of Wisconsin for many decades." Based on the allegations in the plaintiffs' first amended complaint, the circuit court held that American Family had no duty to defend the Mathewses because coverage was excluded. The court granted summary judgment to American Family and dismissed the insurer from the plaintiffs' suit. The Mathewses appealed.

¶ 15. The court of appeals affirmed in a published opinion. *Estate of Sustache v. Am. Family Mut. Ins. Co.,* 2007 WI App 144, ¶ 21, 303 Wis. 2d 714, 735 N.W.2d 186. The court of appeals observed a tension between its opinion in *Berg,* which adopted an ambiguity exception to the four-corners rule, and this court's subsequent decisions in *Doyle v. Engelke,* 219 Wis. 2d 277, 580 N.W.2d 245 (1998), and *Smith v. Katz,* 226 Wis. 2d 798, 595 N.W.2d 345 (1999). *Estate of Sustache,* 303 Wis. 2d 714, ¶¶ 15–16. The court of appeals concluded that this court's opinions in *Doyle* and *Smith* tacitly overruled *Berg* and *Grieb v. Citizens Casualty Co.,* 33 Wis. 2d 552, 148 N.W.2d 103 (1967), which the *Berg* court had cited. *Estate of Sustache,* 303 Wis. 2d 714, ¶ 21. Following *Doyle* and *Smith,* the court of appeals concluded that Wisconsin law does not recognize exceptions to the four-corners rule and affirmed the circuit court. *Id.,* ¶ 21.

¶ 16. The Mathewses petitioned this court for review, which we granted on September 13, 2007.

## II. ANALYSIS

### A. Standard of Review

¶ 17. We review a grant of summary judgment de novo, relying on the same methodology as the circuit

558

court. *Doyle,* 219 Wis. 2d at 283 (citation omitted). Summary judgment is proper where the record demonstrates that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2); *Grams v. Boss,* 97 Wis. 2d 332, 337, 294 N.W.2d 473 (1980).

¶ 18. This case requires us to interpret an insurance contract to determine the scope of an insurer's duty to defend its insureds. This involves a question of law that we review de novo. *Everson v. Lorenz,* 2005 WI 51, ¶ 10, 280 Wis. 2d 1, 695 N.W.2d 298 (citation omitted); *Doyle,* 219 Wis. 2d at 284 (citations omitted).

B. Discussion

1. General Principles

¶ 19. An insurance policy functions as a contract between the insured and the insurer. *Smith,* 226 Wis. 2d at 806 (citation omitted). Thus, interpretation of an insurance policy is governed by the same rules of construction that apply to other contracts. *Donaldson v. Urban Land Interests, Inc.,* 211 Wis. 2d 224, 230, 564 N.W.2d 728 (1997) (citation omitted). Our role in interpreting insurance policy language is to effectuate the intent of the contracting parties. *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65 (citing *Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co.,* 2000 WI 26, ¶ 23, 233 Wis. 2d 314, 607 N.W.2d 276). Policy language is construed as it "would be understood by a reasonable person in the position of the insured." *Id.* (citing *Kremers-Urban Co. v. Am. Employers Ins. Co.,* 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984)). We do not construe policy language

to cover risks that the insurer did not contemplate or underwrite and for which it has not received a premium. *Id.* (citing *Wis. Label,* 233 Wis. 2d 314, ¶ 25)). "An insurance policy is not interpreted in a vacuum or based on hypotheticals. It is tested against the factual allegations at issue." 2 Arnold P. Anderson, *Wisconsin Insurance Law* § 7.26, at 25 (5th ed. 2004).

¶ 20. An insurer's duty to defend its insured is determined by comparing the allegations of the complaint to the terms of the insurance policy. *School Dist. of Shorewood v. Wausau Ins. Cos.,* 170 Wis. 2d 347, 364–65, 488 N.W.2d 82 (1992); *Prof'l Office Bldgs., Inc. v. Royal Indem. Co.,* 145 Wis. 2d 573, 580, 427 N.W.2d 427 (Ct. App. 1988). The duty to defend is triggered by the allegations contained within the four corners of the complaint. *Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis. 2d 824, 835, 501 N.W.2d 1 (1993); *Elliott v. Donahue,* 169 Wis. 2d 310, 320–21, 485 N.W.2d 403 (1992); *Grieb,* 33 Wis. 2d at 557–58. It is the *nature* of the alleged claim that is controlling, even though the suit may be groundless, false, or fraudulent. *Id.* at 558 (citations omitted). The insurer's duty to defend is therefore broader than its duty to indemnify insofar as the former implicates arguable, as opposed to actual, coverage. *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.,* 2003 WI 33, ¶ 20, 261 Wis. 2d 4, 660 N.W.2d 666; *Red Arrow Prods. Co., Inc. v. Employers Ins. of Wausau,* 2000 WI App 36, ¶ 17, 233 Wis. 2d 114, 607 N.W.2d 294.

¶ 21. Courts liberally construe the allegations in the complaint and assume all reasonable inferences. *Fireman's Fund,* 261 Wis. 2d 4, ¶ 36; *Doyle,* 219 Wis. 2d at 284 (citing *Atl. Mut. Ins. Co. v. Badger Med. Supply Co.,* 191 Wis. 2d 229, 241–42, 528 N.W.2d 486 (Ct. App.

1995)). This rule tends to help an insured's demand for coverage. As usual, ambiguity in the coverage terms will be construed against the insurer. *Vandenberg v. Cont'l Ins. Co.*, 2001 WI 85, ¶ 40, 244 Wis. 2d 802, 628 N.W.2d 876. This familiar rule of contract construction also helps the insured.

¶ 22. In determining whether there is a duty to defend, the court first considers whether the insuring agreement makes an initial grant of coverage—i.e., whether the insurer has a duty to indemnify its insured —for the claims asserted. *See Am. Girl*, 268 Wis. 2d 16, ¶ 24. If the court determines that the policy was not intended to cover the claims asserted, the inquiry ends.[7] *Id.* "[T]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." *Grieb*, 33 Wis. 2d at 558 (quoting 29A Am. Jur. Insurance § 1452, at 565 (1960)).

¶ 23. Only after concluding that coverage exists does the court examine the policy's exclusions to determine whether they preclude coverage. *Am. Girl*, 268 Wis. 2d 16, ¶ 24. In other words, when a court determines that there is no coverage in the policy for the allegations in the complaint, it is not necessary to interpret the policy's exclusions. *See Smith*, 226 Wis. 2d at 806 ("Upon close examination, however, we are

---

[7] "Once the circuit court resolves the question of indemnity in the insurer's favor . . . coverage is no longer open to debate. An insurer need not defend a suit in which it has no economic interest." *Baumann v. Elliott*, 2005 WI App 186, ¶ 10, 286 Wis. 2d 667, 704 N.W.2d 361 (citing *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364, 488 N.W.2d 82 (1992)).

convinced that [the defendant] does not have coverage under his policies. Consequently, it is unnecessary . . . to interpret the exclusion clause in circumstances where coverage does not exist.").

¶ 24. The Mathewses contend that their case requires this court to evaluate whether Wisconsin recognizes exceptions to the four-corners rule. Specifically, they seek an exception to the four-corners rule where self-defense is claimed.

¶ 25. When an insurer contests whether there is a contractual obligation to indemnify its insured, it has several options.[8] One of the insurer's options is to provide a defense to the insured on the merits, under a reservation of rights, until the coverage issue is resolved. *Baumann v. Elliott,* 2005 WI App 186, ¶ 8, 286 Wis. 2d 667, 704 N.W.2d 361. This is what American Family did. It also moved the court to stay proceedings on liability issues until the issue of coverage was resolved, and it moved for summary judgment, seeking a dismissal of all causes of action against it, as well as a declaration that it had no duty to continue to defend any of its insureds in the pending action.

¶ 26. Both the insurer and the insured have the right to have the court resolve the issue of coverage separate from any trial on liability. *See* 2 Arnold P.

---

[8] In *Baumann,* the court of appeals indicated that insurers may seek to resolve coverage issues in several ways: (1) By seeking a declaratory judgment; (2) By entering into an agreement with the insured to defend while retaining the right to challenge coverage; (3) By affording a defense under a reservation of rights; and (4) By seeking a bifurcated trial in which the court decides the coverage issue in a separate action from the action on the merits of the complaint. *Baumann,* 286 Wis. 2d 667, ¶ 8.

Anderson, *Wisconsin Insurance Law* §§ 7.51–52, at 38–40 (5th ed. 2004) (discussing alternatives for both the insurer and the insured when coverage is alleged or disputed).

¶ 27. The four-corners rule is normally stated as a rule in which the insurer's duty to defend is determined "without resort to extrinsic facts or evidence." *Fireman's Fund,* 261 Wis. 2d 4, ¶ 19 (citing *Atlantic Mut. Ins. Co.,* 191 Wis. 2d at 236). In its amicus brief, the Wisconsin Insurance Alliance explains that "[w]hen a complaint alleges facts that, if proven, would constitute a covered claim, the insurer must appoint defense counsel for its insured without looking beyond the complaint's four corners." This is the substance of the four-corners rule.

¶ 28. Here, however, we are beyond the initial duty to defend stage of the proceedings. American Family satisfied its duty to defend by providing the Mathewses with an attorney. It then moved the court to stay the proceedings on liability so that it could contest the issue of coverage. It moved for summary judgment and asked for a coverage hearing. It presented the court with affidavits. These affidavits included more evidence than the insurance policies and the complaint; they included transcripts of the depositions of Jeffrey and Anthony Fuller, Roman's son. The Mathewses did not submit affidavits. The circuit court was not oblivious to this additional evidence when it concluded that the facts were "relatively clear and for the most part not in dispute."

¶ 29. Where the insurer has provided a defense to its insured, a party has provided extrinsic evidence to the court, and the court has focused in a *coverage*

hearing on whether the insured's policy provides *coverage* for the plaintiff's claim, it cannot be said that the proceedings are governed by the four-corners rule. The insurer's duty to continue to defend is contingent upon the court's determination that the insured has coverage if the plaintiff proves his case.

### 2. "Occurrence"

¶ 30. We turn to comparing the coverage provided by the homeowner's policy to the allegations in the plaintiffs' first amended complaint, supplemented by affidavits. With respect to personal liability coverage and defense of claims, the Mathewses' American Family homeowner's policy states:

COVERAGE D – PERSONAL LIABILITY COVERAGE

We will pay, up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage *caused by an occurrence covered by this policy.*

Defense Provision.

If a suit is brought against any insured for damages because of bodily injury or property damage *caused by an occurrence to which this policy applies,* we will provide a defense at our expense by counsel of our choice. We will defend any suit or settle any claim for damages payable under this policy as we think proper. (Emphasis added.)

¶ 31. To determine whether the policy provides coverage for the plaintiffs' claims, the court must first consider whether the facts in the complaint allege an "occurrence" covered under the policy. *See Everson,* 280 Wis. 2d 1, ¶¶ 15–16; *Am. Girl,* 268 Wis. 2d 16, ¶ 24.

Put more directly, is an alleged "battery without provocation . . . intentionally causing bodily harm to [the] plaintiff without plaintiff's consent" an "occurrence" covered by the policy?

¶ 32. As stated above, the Mathewses' policy defines "occurrence" as "an accident, including exposure to conditions, which results during the policy period, in: a. bodily injury; or b. property damage." The term "accident" is not defined in the policy.

¶ 33. This court has construed the undefined term "accident" in an insurance policy on a number of occasions. For example, in *Doyle v. Engelke,* we reviewed an insurer's duty to defend a claim alleging negligent supervision. *Doyle,* 219 Wis. 2d at 281. The court was required to interpret the term "event," *id.* at 286–87, which was defined in a comprehensive general liability (CGL) policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 289.

¶ 34. The *Doyle* court noted that "accident" was undefined in the policy and that words in insurance policies are given their "common, everyday meaning." *Id.* (citing *Schmidt v. Luchterhand,* 62 Wis. 2d 125, 133, 214 N.W.2d 393 (1974)). The court consulted a dictionary to determine that an accident is " '[a]n unexpected, undesirable event' or 'an unforeseen incident' which is characterized by a 'lack of intention.' " *Id.* (quoting *The American Heritage Dictionary of the English Language* 11 (3d ed. 1992)). It noted that the definitions "center on an unintentional occurrence leading to undesirable results," and concluded that a reasonable insured would expect a policy defining "event" as an "accident" to cover negligence, including negligent supervision. *Id.* at 290.

¶ 35. In *American Girl* this court reviewed a coverage dispute between a liability insurer and a general

contractor over whether the general contractor's CGL policy provided coverage for "property damage" resulting from an alleged "occurrence." *Am. Girl,* 268 Wis. 2d 16, ¶¶ 1–3.[9]

¶ 36. The court construed "occurrence." *Id.,* ¶¶ 37–38. "Occurrence" was defined in the general contractor's policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.,* ¶ 37. "Accident" was not defined. *Id.* The *American Girl* court turned to several dictionary definitions for guidance:

> The dictionary definition of "accident" is: "an event or condition occurring by chance or arising from unknown or remote causes." *Webster's Third New International Dictionary of the English Language* 11 (2002). *Black's Law Dictionary* defines "accident" as follows: "The word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental." *Black's Law Dictionary* 15 (7th ed. 1999).

*Am. Girl,* 268 Wis. 2d 16, ¶ 37.

¶ 37. The court concluded that the circumstances of the plaintiff's claim fell within the definition of "occurrence" because the property damage that occurred was "clearly not intentional," nor was it "anticipated by the parties." *Id.,* ¶ 38. The damage resulted due to "continuous, substantial, and harmful settlement of the soil underneath the building," which was

---

[9] In *American Girl,* a subcontractor's negligence led to the general contractor's faulty site preparation for a construction project, excessive settlement of soil on the site, and the building's foundation eventually sinking. *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 2004 WI 2, ¶ 3, 268 Wis. 2d 16, 673 N.W.2d 65.

caused by the subcontractor's inadequate site preparation advice to the general contractor. *Id.* Neither the cause of the damage nor the damage itself was "intended, anticipated, or expected"; therefore, it was found to be an "accident" and a covered "occurrence" under the policy. *Id.*

¶ 38. In *Everson v. Lorenz* this court reviewed whether strict responsibility misrepresentation and/or negligent misrepresentation in a real estate transaction constituted an "occurrence" for purposes of a CGL insurance policy, triggering the insurer's duty to defend. *Everson,* 280 Wis. 2d 1, ¶ 2.

¶ 39. In *Everson,* defendant Lorenz owned land in a subdivision, and plaintiff Everson bought a lot in the subdivision for the purpose of constructing a single-family home. *Id.,* ¶¶ 4–5. After the transaction, Everson determined that a portion of the lot was located in a 100–year flood plain. *Id.,* ¶ 5. This was contrary to representations made by Lorenz in a real estate condition report given to Everson.[10] *Id.* As a result, Everson was unable to build, and he sued Lorenz for negligent misrepresentation and breach of contract. *Id.*

¶ 40. Lorenz had a CGL liability policy that covered "property damage" caused by an "occurrence." *Id.,* ¶ 12. "Occurrence" was defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* "Accident" was not defined. *Id.*

¶ 41. The *Everson* court evaluated whether Lorenz's alleged misrepresentation constituted an "ac-

---

[10] Lorenz appeared to make a negligent typographical error in the real estate condition report, typing lot "21" instead of lot "31" before giving the report to Everson. Everson then bought lot 31, which had flood plain problems. *Everson v. Lorenz,* 2005 WI 51, ¶¶ 5, 16 n.3, 280 Wis. 2d 1, 695 N.W.2d 298.

cident" for purposes of coverage. *Id.*, ¶ 16. The court noted that both *American Girl* and *Doyle* relied upon dictionary definitions for assistance and then referenced *Black's Law Dictionary,* which defines "accident" as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." *Id.*, ¶ 15 (quoting *Black's Law Dictionary* 15 (7th ed. 1999)). The court also cited the definition of "accident" established by *Doyle:* " 'an unexpected, undesirable event' or 'an unforeseen incident' which is characterized by a 'lack of intention.' " *Id.* (quoting *Doyle,* 219 Wis. 2d at 289).

¶ 42. The *Everson* court concluded that Lorenz's misrepresentation could not be considered an "accident" for purposes of liability coverage. *Id.*, ¶ 18. The court noted that Lorenz's misrepresentation could be defined as an "act of making a false or misleading statement about something." *Id.*, ¶ 19 (quoting *Black's Law Dictionary* 1016 (7th ed. 1999)). Lorenz's false statement required a "degree of volition inconsistent with the term accident." *Id.* (citing *Sheets v. Brethren Mut. Ins. Co.,* 679 A.2d 540, 552–53 (Md. 1996) (Karwacki, J., dissenting)).

¶ 43. The volitional nature of Lorenz's act was key. The court determined that "where there is a volitional act involved in such a misrepresentation, that act removes it from coverage as an 'occurrence' under the liability insurance policy." *Id.*, ¶ 20. The *Everson* court determined that Lorenz's misrepresentation, although possibly premised upon a mistake of fact or an error of judgment, was nonetheless a volitional act, not an "accident," and not a covered "occurrence" under the CGL policy. *Id.*, ¶ 22.

¶ 44. Finally, we revisited the issue of whether misrepresentations constitute an "accident" in *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, 311 Wis. 2d 492, 753 N.W.2d 448. The question in *Stuart* was whether Weisflog's Showroom Gallery, Inc.'s (WSGI) CGL insurance policy with American Family covered damages resulting from misrepresentations. *Id.*, ¶ 4. The policy covered property damage caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, ¶ 22. "Accident" was not defined. *See Id.*, ¶ 24.

¶ 45. *Stuart* involved allegations of misrepresentations by WSGI personnel, made in violation of the Home Improvement Trade Practices Act,[11] to induce the homeowners to enter into contracts for home remodeling and design. *Id.*, ¶¶ 7, 10. WSGI personnel allegedly misrepresented the quality of WSGI products and claimed that WSGI personnel understood local building codes and regulations and that WSGI personnel were capable of providing architectural service and design work. *Id.*, ¶ 9. A jury found that WSGI made false, deceptive, or misleading representations in order to induce the homeowners to enter into a remodeling architecture contract, that the homeowners relied on those representations, and that damages resulted. *Id.*, ¶ 10.

¶ 46. In concluding that the misrepresentations to the homeowners were not accidental, and therefore not covered as an "occurrence" under WSGI's CGL policy, this court consulted dictionary definitions and past decisions in *Doyle, Everson,* and *American Girl* and concluded that an "accident" "is an event or condition

---

[11] Wis. Admin. Code § ATCP 110 (Sept., 2001).

occurring by chance or one that arises from unknown causes, and is unforeseen and unintended." *Id.*, ¶ 24; *see id.*, ¶¶ 24 n.13, 29–34, 40. The court approvingly cited *American Girl*'s definition of an "accident": " 'an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident;' rather, it is the causal event that must be accidental for the event to be an accidental occurrence." *Id.*, ¶ 40 (quoting *Am. Girl,* 268 Wis. 2d 16, ¶ 37). WSGI's misrepresentations were made "volitionally with the particular intent to induce" the homeowners to enter into a contract and were therefore the non-accidental cause of their damages and not covered. *Id.*, ¶ 45.

¶ 47. Keeping these analyses of "accident" in mind, we turn to the Mathewses' case.

¶ 48. The plaintiffs' first amended complaint alleged that during the underage drinking party at Roman's house "a number of the attending teenagers started calling [Jeffrey] on his cell phone" to harass him and bait him to come to the party "to engage in a fight with [Sustache]." The complaint further alleged that "[s]hortly thereafter, defendant [Jeffrey] showed up at the party, asked for [Sustache] and without warning or provocation, punched [Sustache] out, causing him to fall into a curb thereby causing serious injuries and ultimately death."

¶ 49. Count 2 alleged that Jeffrey "was negligent in not asking [Sustache] whether or not he was the person that had been calling him on his cell phone and baiting him into a fight." If Jeffrey had asked Sustache whether he was the person calling, Jeffrey allegedly would have learned that Sustache had not called him. Count 2 alleged that Jeffrey's failure to take the "reasonable step" of ascertaining whether Sustache called

him "was a proximate cause of the damages sustained by plaintiffs and resulted in [Sustache's] death." Although claims of negligence normally qualify for coverage, this negligence claim dropped out of consideration in circuit court when the Mathewses conceded that it was insufficient.

¶ 50. Count 3 of the complaint alleged that "[Jeffrey] committed battery without provocation by *intentionally causing bodily harm* to [Sustache] without [his] consent thereby causing [Sustache's] death." (Emphasis added.) This count prompted Jeffrey's claim of self-defense.

¶ 51. We conclude that the allegations in the plaintiffs' first amended complaint, supplemented by Jeffrey's deposition,[12] cannot reasonably be construed

[12] Jeffrey testified regarding the incident at a January 10, 2006, deposition. He indicated that prior to hitting Sustache, the two individuals were encircled by a group of people yelling and chanting for a fight. Jeffrey removed his shirt, despite the fact it was the middle of winter, to avoid having the shirt get in the way during a fight. Sustache, who appeared intoxicated, had his fists clenched at his sides, stepped forward, and pushed Jeffrey in the chest with both hands. Someone in the circle yelled "cops," Jeffrey turned to look, and a person standing behind Sustache blurted out "hurry up and hit him, he's not looking." Jeffrey testified:

Q So did you—after you were pushed, did you stop your motion back and pause, or was it a fluid motion when you came back?

A Fluid motion.

Q Did you—ultimately you struck Mr. Sustache, correct?

A Yes.

Q At what point do you—did you strike him with a fist?

A Yes.

571

to constitute a covered claim under the Mathewses' homeowner's policy. The American Family policy provides indemnity coverage and a duty to defend for an "occurrence," defined as an "an accident, including exposure to conditions, which results during the policy period, in: a. bodily injury; or b. property damage." Once again, the term "accident" is not defined.

¶ 52. Considering the discussion of "accident" in *Doyle,* we cannot conclude that an allegation that Jeffrey "intentionally caus[ed] bodily harm to [Sustache]" could reasonably be "characterized by a 'lack of intention.'" *Doyle,* 219 Wis. 2d at 289 (quoting *The American Heritage Dictionary of the English Language* 11 (3d ed. 1992)). The *Doyle* court noted that an "accident" might be viewed as "an unintentional occurrence leading to undesirable results." *Id.* at 290. Jeffrey's alleged decision to intentionally "punch out" Sustache may have produced unexpected results, but this intentional act did not constitute an "accident." One cannot "accidentally" intentionally cause bodily harm.

. . . .

Q Where did you first strike Mr. Sustache?

A In his left jaw.

Q To your knowledge, was he facing you squarely when you struck him?

A Yes.

. . . .

Q What happened after you struck Mr. Sustache in the left cheek?

A He fell to the ground.

Q *Was it your intent to strike him in the left cheek?*

A *Yes.* (Emphasis added.)

¶ 53. The *American Girl* court's discussion of "accident" also buttresses our conclusion. The court referred to *Black's Law Dictionary* for the notion that "[a] result, though unexpected, is not an accident; the means or cause must be accidental." *Am. Girl,* 268 Wis. 2d 16, ¶ 37 (quoting *Black's Law Dictionary* 15 (7th ed. 1999)). Here, the plaintiffs' first amended complaint stated "[Jeffrey] committed battery without provocation by intentionally causing bodily harm to [Sustache]" and that that was the "proximate cause of [Sustache's] damages and death." The complaint also stated that Jeffrey "punched [Sustache] out." By the complaint's terms, the punch that caused Sustache's injuries and death was not accidental; Jeffrey intended the punch. Furthermore, the *American Girl* court observed that the cause of damages to the building in that case (settling of the foundation due to improper site preparation) was accidental because it was not "intended, anticipated, or expected." *Id.,* ¶ 38. Here the plaintiffs' allegations that Jeffrey intentionally caused bodily harm to Sustache by punching him constitute a volitional assault that was intended, anticipated, and expected.[13] Jeffrey's punch was not "an event or condition occurring by chance or arising from unknown

---

[13] One treatise observes:

> In order to constitute an "accident" or "occurrence" under a policy of liability of insurance, an event must be unforeseen, unexpected, or unanticipated. The nature of an assault is such that the event itself is typically intentional in nature. On their face, therefore, assaults would appear to inherently fall outside of the coverage provided in a liability policy. . . .

> If the insured is also the assailant, the result is that there is no coverage for the assault because the act was intentionally committed by the insured.

9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 127:21, at 127–54—127–55 (3d ed. 2000).

or remote causes." *Id.*, ¶ 37 (quoting *Webster's Third New International Dictionary of the English Language* 11 (2002)).

¶ 54. Like the allegation of a pre-sale misrepresentation of fact in *Everson,* the allegations of intentional battery here evince a degree of *volition* inconsistent with the term "accident." *See Everson,* 280 Wis. 2d 1, ¶ 19. Even if we were to assume, as alleged in Count 2, that Jeffrey was negligent in failing to ascertain whether it was Sustache who called him to propose a fight, Jeffrey's subsequent and separate volitional act of punching Sustache is inconsistent with the term "accident." *See id.* (citation omitted). As the *Everson* court recognized, an "accident" is "an unintended and unforeseen injurious occurrence." *Id.*, ¶ 15 (quoting *Black's Law Dictionary* 15 (7th ed. 1999)). According to the complaint, in response to taunting telephone calls encouraging him to fight Sustache, Jeffrey voluntarily traveled to Sustache's location at Roman's house to confront him and intentionally punched Sustache in the face, ultimately causing severe injury and death. These allegations assert a pattern of volitional action, regardless of whether Jeffrey was mistaken about Sustache's role in the taunts.

¶ 55. Finally, there is nothing in *Stuart* that is inconsistent with this analysis.

¶ 56. We conclude that no reasonable person would regard the alleged intentional battery perpetrated by Jeffrey against Sustache as an "unexpected . . . event," or an "unforeseen incident . . . char-

---

However, even if privileged, "an injury deliberately caused by an act of self-defense is still not an injury that was caused by an accident." 2 Allan D. Windt, *Insurance Claims and Disputes* § 11.3, at 11–38—11–39 (5th ed. 2007).

acterized by a lack of intention,"[14] or "an event . . . occurring by chance or arising from unknown or remote causes."[15] Striking the words "without provocation" from the complaint would not alter the essence of the complaint: that Jeffrey intentionally caused bodily harm to Sustache. Accordingly, we hold that the Mathewses' policy does not cover the plaintiffs' claims because Jeffrey's actions were not accidental and, thus, did not give rise to an "occurrence."

### 3. Intentional Injury Exclusion

¶ 57. In determining whether there is a duty to defend, the court first considers whether the insuring agreement makes an initial grant of coverage. *Am. Girl,* 268 Wis. 2d 16, ¶ 24. Where it is clear that the policy was not intended to cover the claims asserted, the inquiry ends. *Id.* Only after concluding that coverage exists does the court examine the policy's exclusions to determine whether they preclude coverage. *Id.*

¶ 58. Since we concluded above that the plaintiffs' suit does not give rise to coverage for Jeffrey's actions, we need not consider the policy's intentional injury exclusion.

¶ 59. The language of the Mathewses' policy resolves the question of the duty to continue to defend once the question of coverage has been decided. The defense provision of the policy states that defense counsel will be provided by American Family "[i]f a suit

---

[14] *Doyle v. Engelke,* 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998) (citation omitted); *Everson,* 280 Wis. 2d 1, ¶ 15 (citations omitted).

[15] *Am. Girl,* 268 Wis. 2d 16, ¶ 37 (citation omitted); *Stuart v. Weisflog's Showroom Gallery, Inc.,* 2008 WI 86, ¶ 24, 311 Wis. 2d 492, 753 N.W.2d 448 (citation omitted).

is brought against any insured for damages because of bodily injury or property damage *caused by an occurrence to which this policy applies.*" (Emphasis added.)

¶ 60. Since the plaintiffs' suit was not brought against the Mathewses for damages "caused by an occurrence to which th[e] policy applies," American Family has no duty to continue to defend.

### III. CONCLUSION

¶ 61. After carefully considering the facts and circumstances of this case, especially the allegations of the complaint and the pertinent homeowner's policy, we conclude that the Mathewses' homeowner's policy does not provide coverage for the plaintiffs' claims. Consequently, American Family has no duty to continue to defend the Mathewses. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 62. ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority that this is not a case in which the four corners rule is applicable. The majority aptly explains why this case does not present the issue of whether there are exceptions to the four corners rule.

¶ 63. I also agree with the majority that the conduct here does not constitute an accident or occurrence within the meaning of the Matthews' insurance policy. I write separately because of the majority's mixed analysis of "accident," and my belief that we should interpret "accident" as would the reasonable insured.

¶ 64. The majority fails to provide a clear statement of why Jeffrey's action does not constitute an accident, and hence an occurrence, within the meaning

of the Matthews' insurance policy. Instead, it offers mixed rationales that lead to confusion rather than clarity. Ultimately, the majority proffers an understanding of "accident" that does not comport with the understanding of the reasonable insured.

¶ 65. The focus of this case is the conduct alleged in count 3 of the complaint, and supplemented by deposition testimony. *See* majority op., ¶¶ 50–51. Count 3 alleges that Jeffrey "committed battery without provocation by intentionally causing bodily harm . . . ." Specifically, Jeffrey punched Sustache in the face.

¶ 66. In determining that this case does not involve an accident, the majority offers shifting rationales. The first rationale it offers is that Jeffrey intentionally caused bodily harm to Sustache. *Id.*, ¶ 52. In other words, the intent to harm, rather than intent to perform the action that caused the harm, is the focus.

¶ 67. The majority's second rationale is that Jeffrey "intended the punch" that caused Sustache's injury and death. *Id.*, ¶ 53. Stating that an accident requires that the cause of damages be unintended, the majority reasons that damages due to an intended punch cannot be an accident. The action which caused the damage is the focus of the second rationale.

¶ 68. The majority's third rationale is that "Jeffrey voluntarily traveled to Sustache's location . . . to confront him and intentionally punched Sustache . . . ." Majority op., ¶ 54. According to the majority, this constitutes "a *pattern* of volitional action." *Id.* (emphasis added). The majority states that the actions here "evince a degree of *volition* inconsistent with the term 'accident.' " *Id.* (emphasis in original). A "pattern of volitional action" is the focus of the third rationale.

¶ 69. My view is that we should stick with this court's longstanding doctrine in interpreting insurance

policies. Language in an insurance policy should be construed as understood by a reasonable person in the position of the insured. *Frost v. Whitbeck,* 2002 WI 129, ¶ 20, 257 Wis. 2d 80, 654 N.W.2d 225. As I have stated elsewhere, in determining whether there is an accident, the focus should be on the injury or damages, not on whether the action that caused the damages was intended. *Stuart v. Weisflog,* 2008 WI 86, ¶ 4 & n.1, 311 Wis. 2d 492, 753 N.W.2d 448 (Bradley, J., concurring) (*Stuart II*). Such a view comports with the understanding of the reasonable insured.

¶ 70. Thus, the majority's first rationale, the fact that Jeffrey intended harm to Sustache when he threw the punch, is sufficient to determine that there is no accident here. The analysis should end right there.

¶ 71. Accordingly, because of the majority's mixed analysis of "accident," and for the reasons set forth more fully in my concurrence in *Stuart II,* I respectfully concur.