DANIEL KELLY, J. (dissenting).
¶ 64 In the broadest sense, there are three relevant analytical phases in this case. The first inquires into whether the plaintiff's complaint states a cause of action upon which relief can be granted (the pleadings phase). The second addresses whether the defendant's commercial general liability insurance policy provides coverage for the claimed damages (the coverage phase). And the third is the trial on the merits of the plaintiff's cause (the merits phase). This case required us to focus on the coverage phase. That is, we were supposed to be reviewing whether Mr. Mustafa's insurance policy provided coverage for Mr. Talley's damages. However, we allowed a mélange of insurance provisions, pleading disputes, and policy questions to divert us into the first and third phases. And there we foundered.
¶ 65 The circuit court wisely bifurcated the trial proceedings in this case so that the parties could determine whether the policy provides coverage for the alleged tort (the coverage phase) prior to litigating the merits of the plaintiff's complaint (the merits phase). The coverage phase calls upon the court to answer one-and only one-question: If the plaintiff should prevail in the merits phase, would the insurance policy *431 cover the damages? If not, the court dismisses the insurer; otherwise, the insurer remains for the duration.
¶ 66 The purpose of the coverage phase is not to decide whether the plaintiff has stated a good cause of action (the pleading phase), nor is it to try the merits of the plaintiff's claim (the merits phase). The purpose of the coverage phase is to do nothing but authoritatively construe the *74 insurance contract. That is to say, the court takes as its starting point that the plaintiff will win his case, and based on that assumption, it determines whether the policy provides coverage. Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶ 29, 311 Wis. 2d 548, 751 N.W.2d 845 ("The insurer's duty to continue to defend is contingent upon the court's determination that the insured has coverage if the plaintiff proves his case."). Instead of focusing on the coverage-phase question, the court's opinion dwelled sometimes on the pleading phase, sometimes on the merits phase. But it gave little attention to the actual coverage question before us.
I. THE PLEADINGS PHASE
¶ 67 The portion of the court's opinion spent on the pleadings phase improperly required Mr. Talley's negligent supervision claim to satisfy a standard of pleading we traditionally require only of matters sounding in fraud.[1] A plaintiff may succeed with such a claim if, as a factual matter, the defendant's breach of *432 its duty to train and supervise its employee was a cause-in-fact of the plaintiff's actual damages.[2] We have never required a heightened pleading standard for this cause of action, and the court identifies nothing to suggest otherwise.
¶ 68 And yet the court's analysis unmistakably demanded of Mr. Talley something more than notice-pleading.[3] The court observed that "Talley's complaint alleges only that the 'defendants' were negligent in failing to 'train and supervise their employees' and 'failed to provide adequate or proper security' because the 'employees' 'were the parties who attacked the plaintiff.' " Majority op., ¶ 28. This, the court concluded, was insufficient. "[T]he negligent supervision *433 claim against Mustafa can qualify as an occurrence only if facts exist showing that Mustafa's own conduct accidentally caused Talley's injuries." Id., ¶16.
¶ 69 Why wouldn't Mr. Talley's allegations be enough? We are still a notice-pleading state, so to the extent the court was considering whether the complaint was sufficient, Mr. Talley didn't have to do very much at all. He needed to allege that *75 Mr. Mustafa had a duty, he breached it, and his breach caused actual damages. That's all. He didn't need to identify the nature of training Mr. Mustafa should have provided to his employee, or how it was deficient, or when the training should have been done, or how frequently.[4] That is to say, he had absolutely no obligation to fill his complaint with discrete facts capable of proving Mr. Mustafa's negligence and the causal connection to his damages.
¶ 70 So the nature of the court's analysis is odd because there is no precedent for a heightened standard of pleading for negligent supervision claims. But it is also odd because the court should not have been conducting this analysis at all. We were not asked to review whether the circuit court should have dismissed this case for failing to state a claim upon which relief can be granted. We were asked to determine whether the insurance policy provides coverage, which assumes an adequately pled cause of action.
*434 II. THE MERITS PHASE
¶ 71 The court then leapfrogged from the pleading phase all the way to the merits phase to opine on whether Mr. Talley would prevail on his claim. But our opinion on that question is pretty much the definition of irrelevant. Maybe Mr. Talley won't prevail. If he doesn't, that won't say a thing about whether the insurance policy covered the claim. And that is because the coverage phase assumes not just an adequately-pled cause of action, but a successful one. Estate of Sustache, 311 Wis. 2d 548, ¶ 22, 751 N.W.2d 845 ("[T]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." (quoting Grieb v. Citizens Cas. Co. of New York, 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967) ) ).
¶ 72 The court erred not just because it had no business addressing the merits of Mr. Talley's case, but also in the substance of its analysis. Specifically, the court made no allowance for the nature of a negligent supervision claim, which always involves concurrent causation. Instead, it required a separate and distinct line of causation between Mr. Mustafa and Mr. Talley. The court said coverage will only exist "[w]hen a plaintiff alleges [actionable] facts independent from the intentional act giving rise to the injury." Majority op., ¶ 30. That is to say, "the negligent supervision claim against Mustafa can qualify as an occurrence only if facts exist showing that Mustafa's own conduct accidentally caused Talley's injuries." Id., ¶16. It then concluded that "when a negligent supervision claim is based entirely on an allegation that an employer should have trained an employee not to intentionally punch a customer in the face, no coverage exists." Id.;
*435 see also id., ¶29 ("Because Talley does not present any separate basis for Mustafa's negligence-any independent act by Mustafa that accidentally caused Talley's injury-no coverage exists.").
¶ 73 This entirely misses the fact that negligent supervision claims never involve a separate line of causation between the employer and the victim. To the contrary, the causal line always, every single time, goes from the employer, through the employee, *76 to (in this case) Mr. Talley's face. We succinctly described the proper analysis in Miller: "With respect to a cause of action for negligent hiring, training or supervision, we determine that the causal question is whether the failure of the employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury." Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 262, 580 N.W.2d 233 (1998). This, we said, "requires two questions with respect to causation. The first is whether the wrongful act of the employee was a cause-in-fact of the plaintiff's injury. The second question is whether the negligence of the employer was a cause-in-fact of the wrongful act of the employee." Id. There is no separate causal pathway from Mr. Mustafa to Mr. Talley. It must go through Mr. Scott, or there is no causality at all.
¶ 74 The facts the court faults Mr. Talley for not presenting are, to the extent he has them, those that will support the two jury questions described in Miller. The court hasn't seen them, naturally, because we haven't yet arrived at the merits phase. Mr. Talley will need to be concerned if he can't marshal them once the trial commences. But not now. So, in concluding there is no coverage because Mr. Talley hasn't sufficiently supported his claim, the court jumped the gun. And if incorporating the merits inquiry into the coverage *436 analysis is not jumping the gun, there was hardly any reason to bifurcate the proceedings in the first place, was there?
III. THE COVERAGE PHASE
¶ 75 If we had narrowed our attention to the proper phase under consideration, the question we are resolving would be of little moment. We have previously held that a commercial general liability insurance policy with terms functionally identical to the ones we review today provides coverage for an employer's negligent training or supervision. See Doyle v. Engelke, 219 Wis. 2d 277, ¶¶ 16-17, 19, 580 N.W.2d 245 (1998). And the court agrees, at least in theory, that this is so. Majority op., ¶ 30 ("This is not to say that a negligent supervision claim will never trigger insurance coverage."). So maybe the point of this case is to overrule Doyle's holding that negligent supervision of an employee qualifies as an occurrence within the meaning of CGL policies like the one at issue here. If that is what we are doing, we should just say so. Otherwise, this case presents nothing conceptually distinct from Doyle, a case we decided twenty years ago. Perhaps insurers should be protected from claims of this nature. The answer to that question, however, is beyond both my ken and our authority. But I do know there has been nothing in the last two decades that has prevented insurers from protecting themselves through an appropriately-drafted exclusion from coverage.
*
¶ 76 But perhaps this was not really about insurance coverage at all, and we were looking for an opportunity to declare that negligent supervision *437 claims do not lie when the employee's conduct is covered by criminal statutes. See majority op., ¶ 28 ("Typically, an employee's training and subsequent supervision does not include a segment on how to refrain from punching others because the assault and battery statutes already prohibit such conduct."). If this is what we were about, we should have said so and given our reasons for restricting the scope of this tort. Maybe that would even be a good policy choice. But I would prefer to leave that question to the legislature.
¶ 77 Additionally, if we have restricted the scope of this tort, we should recognize the effect of that ruling. If we really meant what we said in paragraph 28, then Mr. Talley has no meritorious claim against *77 Mr. Mustafa. And if that is so, our mandate should include dismissal of the case. That would be quite a curiosity-Mr. Talley lost on the merits of his cause while the merits phase of his case was still stayed. On the other hand, perhaps that odd result is a hint that we have gotten ahead of ourselves.
¶ 78 I believe the court of appeals got this case exactly right. For the reasons expressed in that opinion, and the reasons I have given above, I respectfully dissent.
¶ 79 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and ANN WALSH BRADLEY join this dissent.

See Resp. Br. at 22.

John Doe 1, 303 Wis. 2d 34, ¶ 16, 734 N.W.2d 827 ("A claim for negligent supervision of an employee requires a plaintiff to plead and prove all of the following: (1) the employer had a duty of care owed to the plaintiff; (2) the employer breached its duty; (3) a wrongful act or omission of an employee was a cause-in-fact of the plaintiff's injury; and (4) an act or omission of the employer was a cause-in-fact of the wrongful act of the employee.").

"As a notice pleading state, Wisconsin law requires only that a complaint 'set forth the basic facts giving rise to the claims.' " United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc., 2013 WI 72, ¶ 21, 349 Wis. 2d 587, 836 N.W.2d 807 (quoted source omitted). "The purpose of a complaint in a notice pleading jurisdiction is to provide 'sufficient detail' such 'that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery.' " Id. (quoted source omitted).

The court says "the occurrence, in Talley's view, is Mustafa's failure to tell Scott not to punch customers in the face." Majority op., ¶ 28. That's one way of putting it, I suppose. A less patronizing way would be to say Mr. Talley's view is that Mr. Mustafa failed to teach Mr. Scott how to de-escalate tense situations so that verbal confrontations would not turn physical. That seems like a worthy subject of training, yes? Especially for an employee (if employee he was) with customer-facing responsibilities?