COURT OF APPEALS
DECISION
DATED AND FILED

June 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP941**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV141

IN COURT OF APPEALS
DISTRICT III

DIANNA C. SUNDAY AND KENNETH L. SUNDAY,

   PLAINTIFFS-APPELLANTS,

 V.

MCMILLAN-WARNER MUTUAL INSURANCE COMPANY AND
MT. MORRIS MUTUAL INSURANCE COMPANY,

   DEFENDANTS-RESPONDENTS,

NICHOLAS A. SEMPF NYREN, ABC INSURANCE COMPANY,
DREW I. NILES, DEF INSURANCE COMPANY, GHI INSURANCE COMPANY
AND WILLIAM C. FITZER,

   DEFENDANTS,

WISCONSIN MASONS' HEALTH CARE FUND,

   SUBROGATED DEFENDANT.

APPEAL from a judgment of the circuit court for Polk County: DANIEL J. TOLAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Dianna and Kenneth Sunday (collectively "the Sundays") appeal from a judgment declaring that McMillan-Warner Mutual Insurance Company and Mt. Morris Mutual Insurance Company had no duty to defend or indemnify Nicholas Sempf Nyren ("Nicholas") due to exclusions in the applicable homeowners' policies for bodily injuries resulting from the criminal acts of an insured.  We affirm.

## BACKGROUND

¶2    The undisputed facts are as follows.  Seventeen-year-old Nicholas and his two minor-aged friends were hunting while using flashlights after lawful hunting hours.  Nicholas discharged a firearm across a field causing injury to Dianna Sunday, who was walking along the tree line on the other side of the field after descending from her bow hunting tree stand at the end of hunting hours.  The youths fled the scene without providing aid to Dianna.  She was able to call a family member for help, but ultimately sustained significant permanent injuries.

¶3    Nicholas was later criminally charged with injury by negligent use of a weapon/explosive, a Class I felony, pursuant to WIS. STAT. § 940.24(1) (2019-20).[1]  Nicholas pleaded guilty and was convicted of the crime.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4     The Sundays commenced a civil lawsuit against the youths, alleging their negligence and concerted actions caused Dianna's injuries. At the time of the incident, Nicholas was insured under each of his parents' homeowners' policies, which were issued by McMillan-Warner and Mt. Morris, respectively. Accordingly, the insurers were named as additional defendants in the lawsuit.

¶5     Mt. Morris's and McMillan-Warner's policies contained an exclusion for bodily injuries resulting from the criminal acts of an insured. Based on this exclusion, Mt. Morris filed a motion for declaratory judgment seeking a declaration that its policy provided no coverage for the claims at issue. McMillan-Warner filed a similar motion based on its policy exclusion.

¶6     The circuit court granted motions to bifurcate and stay the merits on the Sundays' claims pending the coverage determinations. Following discovery, the insurers sought summary judgment on the coverage issue based upon each policy's criminal acts exclusion, and each further argued that a policy exclusion for punitive damages also applied.[2] The court granted summary judgment in favor of the insurers. The Sundays now appeal.

## DISCUSSION

¶7     The issue of insurance coverage is often addressed through a summary judgment motion because both the interpretation and application of an insurance contract present questions of law. *Siebert v. Wisconsin Am. Mut. Ins. Co.*, 2011 WI 35, ¶28, 333 Wis. 2d 546, 797 N.W.2d 484. We interpret

---

[2] The Sundays do not challenge the punitive damages issue on appeal, and we shall not further address the issue.

unambiguous policy language according to its plain and ordinary meaning as understood by a reasonable person in the position of the insured. *Id.*, ¶31. We will not rewrite policy language to cover a risk that the insurer did not contemplate and for which it has not received a premium. *See Sustache v. American Fam. Mut. Ins. Co.*, 2008 WI 87, ¶19, 311 Wis. 2d 548, 751 N.W.2d 845.

¶8 We assume without deciding that the policies provided an initial grant of coverage for the Sundays' claims. Furthermore, the Sundays do not contend that the criminal acts exclusions differ substantively as between the Mt. Morris and McMillan-Warner policies. We consequently need only determine whether the exclusion for bodily injuries that are "the result of a criminal act of an insured" precludes coverage under the undisputed facts.

¶9 The Sundays argue that the phrase "criminal act" is ambiguous. They contend that most insureds would understand many behaviors to be criminal—such as murder, battery, and armed robbery. The Sundays nevertheless contend reasonable insureds would not understand that Wisconsin law criminalizes "far more behaviors than the average person may consider." According to the Sundays, a reasonable insured "does not know, let alone contemplate," the Wisconsin Criminal Code and would not expect coverage to be excluded for negligent and reckless acts. Instead, the Sundays argue that reasonable insureds "think of homicide, sexual assault, battery, theft, etc.—the big ones," as acts that would carry with them potential criminal charges and penalties.

¶10 The Sundays also contend that the use of the term "criminal" gives a layperson the impression that "criminal" implies "a wicked or heinous act." Thus, the Sundays assert a reasonable insured would understand that the exclusion does not apply to every act that is technically classified as a crime, but only to "serious

core criminal offenses." The Sundays also state that "it is questionable whether the purpose of the criminal acts exclusion is served by denying protection to an insured who was incapable of forming a criminal intention." The Sundays claim there is "nothing in the policy to alert a reasonable insured that a hunting accident involving ordinary negligence is excluded."

¶11 At the outset, we affirmatively reject any notion that the policy exclusion applies only to acts requiring criminal intent. Many "serious" and obviously criminal acts are based on reckless or negligent conduct, such as the acts in the present case. Here, the exclusion does not distinguish between criminal acts that require a specific type of criminal intent and those that do not. Indeed, the exclusion says nothing about the intent of the person engaging in the criminal act and the phrase "criminal act" does not have any modifiers, such as "serious" or "intentional." The circuit court held the phrase "criminal act" plainly means any act that violates a provision of the criminal code. In fact, the Sundays' argument that the exclusion only applies to "serious" crimes would itself create ambiguity, as reasonable insureds could dispute what crimes qualify as "serious."

¶12 Moreover, "criminal" act and "intentional" act are enumerated as separate and distinct exclusions in the policies. As the circuit court stated, "[I]t would not make sense to interpret that the exclusion of any bodily injury as a result of the criminal act requires an intentional act because it's already covered." The court also noted that if the criminal acts exclusion applied only to crimes with an intent element, the criminal acts exclusion would be swallowed by the intentional acts exclusion. A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction that gives effect to all of its provisions. *See **Stanhope v. Brown Cnty.***, 90 Wis. 2d 823, 848-49, 280 N.W.2d 711 (1979).

¶13     The circuit court also noted that the Sundays "concede that one of the public policies of [the] criminal act exclusion is to forbid insurance protection of criminal activity and discourage such activities."  The court found that the Sundays' argument flies in the face of that long-established policy favoring the deterrence of crime and holding a person personally responsible for their criminal actions.  The court stated:

> [T]he public policy of [excepting] criminal acts deters crime whether it be intentional, reckless or criminally negligent because a reasonable insured would understand that there is no coverage for damages caused by a criminal act.  The public policy to deter crime is equally applicable to all crimes whether they be intentional, reckless or negligent.

¶14     We agree, in the main, with the circuit court that public policy in this case requires that insurance companies *not* be allowed to provide coverage for damages related to an insured's criminal acts.  Applying the criminal acts exclusion in this instance is consistent with the public policy of deterring crime, as well as requiring an insured who commits a criminal act to bear the resulting financial responsibility for bodily injuries caused by the criminal act.

¶15     Even if we could agree with the Sundays that the criminal acts exclusion is ambiguous under the facts of the present case and that it applies only to "serious core criminal offenses," a reasonable insured would understand that Nicholas's acts undeniably constituted a serious crime.  As the circuit court stated:

> The point is that this is the type of big one or serious crime that a reasonable person would expect to be considered a criminal act.  It involved a firearm, a shooting, an injury, and it consists of conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another.  There is no doubt that this was a criminal act.

¶16 This rationale is particularly true in the present case, where Nicholas was charged with a felony. Although the policy language does not require conviction of a crime, it is undisputed that Nicholas pleaded guilty to the charge of negligently causing injury by use of a dangerous weapon. *See* WIS. STAT. § 940.24(1). As the circuit court noted, "Wisconsin Statutes Chapter 940 is the chapter for crimes against life and bodily security." Nicholas was subsequently convicted of the crime charged—a serious felony that created a substantial and unreasonable risk of death or great bodily harm to another. *See* WIS. STAT. § 939.25. A reasonable person would expect Nicholas's conduct to be considered a criminal act. Under these circumstances, the court properly concluded there was no coverage under the policies for the claims in this case.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.