**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

CNH INDUSTRIAL AMERICA LLC,    )
      )
      Plaintiff,    )
      )
      v.    )   C.A. No. N12C-07-108 EMD CCLD
      )
AMERICAN CASUALTY COMPANY OF    )   TRIAL BY JURY OF TWELVE
READING, PENNSYLVANIA, *et al.,*    )   DEMANDED
      )
      Defendants.    )

Submitted: December 20, 2016
Decided: April 6, 2017

**The Court's Decision on Damages**

Brian M. Rostocki, Esquire, and John C. Cordrey, Esquire, Reed Smith LLP, Wilmington, Delaware and James M. Davis, Esquire, Thomas A. Marrinson, Esquire, Evan T. Knott, Esquire, and Emily E. Garrison, Esquire, Reed Smith LLP, Chicago, Illinois. *Attorneys for CNH Industrial America LLC.*

Neal J. Levitsky, Esquire, and Seth A. Niederman, Esquire, Fox Rothschild LLP, Wilmington, Delaware and Richard L. McConnell, Esquire, and Michael J. Gridley, Esquire, Wiley Rein LLP, Washington, DC. *Attorneys for Travelers Indemnity Company.*

**DAVIS, J.**

## I. INTRODUCTION AND BACKGROUND

This is an insurance coverage case assigned to the Complex Commercial Litigation Division of the Court. Plaintiff CNH Industrial America LLC ("CNH") filed a declaratory relief and breach of contract case against several insurance companies, including Travelers Indemnity Company ("Travelers"). CNH's complaint alleges Travelers breached its duty to defend and indemnify CNH in underlying asbestos-related lawsuits.

The Court has issued numerous decisions in this case. Among these, the Court has held that: (1) Wisconsin law applied to the policies;[1] (2) CNH was the policies' proper assignee under 1994 reorganization agreements;[2] (3) Travelers has a duty to defend CNH;[3] (4) Travelers's July 6, 2015, payments extinguished applicable policy limits on the policies;[4] and (5) Travelers's conduct constituted a waiver on the issues of notice and cooperation, and that Travelers's duty to defend did not terminate until Travelers made the July 6, 2015 payment.[5]

After these decisions, one matter remained open—the amounts Travelers may owe for defense costs incurred by CNH prior to July 6, 2015. Although "one matter," the question as to what Travelers may owe on defense costs involved hundreds of suits and a multitude of open issues (factual and legal). The parties are well-represented in this litigation. As such, the parties' counsel significantly narrowed the issues before the scheduled trial date.[6] Moreover, the Court addressed some of the open matters at a pretrial conference conducted on November 14, 2016.

By the date of trial, several issues still remained. First, while the parties had resolved a number of defense cost claims, CNH contends Travelers still owes it defense costs for 211 claims CNH has tendered to Travelers. Travelers disputes that it owes defense costs on the 211 claims, arguing that these claims do not meet the Court mandate for coverage (discussed below).

---

[1] *CNH Indus. Am. LLC v. Am. Cas. Co. of Reading, PA,* C.A. No. N12C-07-108 EMD, 2015 WL 4538120, at *2 (Del. Super. Jun. 8, 2015) (ORDER).

[2] *CNH Indus. Am. LLC v. Am. Cas. Co. of Reading, PA,* C.A. No. N12C-07-108 EMD, 2015 WL 3863225, at *2 (Del. Super. Jun. 8, 2015) (ORDER) 2015 WL 3863225, at *2 (Del. Super. Jun. 8, 2015) (ORDER). Important here, J.I. Case Company eventually became Case Corporation in 2002, and then Case Corporation changed its name to CNH. *See CNH Indus. Am. LLC v. Am. Cas. Co. of Reading, PA,* C.A. No. N12C-07-108 JTV, 2014 WL 626030, at *2 (Del. Super. Jan. 6, 2014).

[3] *CNH Indus. Am. LLC v. Am. Cas. Co. of Reading, PA,* C.A. No. N12C-07-108 EMD, 2015 WL 5016849, at *3 (Del. Super. Aug. 21, 2015). *See also CNH Indus. Am. LLC v. Am. Cas. Co. of Reading, PA,* C.A. No. N12C-07-108 EMD, 2016 WL 4440477 (Del. Super. Aug. 19, 2016).

[4] *CNH Indus. Am. LLC v. Am. Cas. Co. of Reading, PA,* C.A. No. N12C-07-108 EMD, 2016 WL 5239630 (Del. Super. Sept. 21, 2016).

[5] *CNH Indus. Am. LLC v. Am. Cas. Co. of Reading, PA,* C.A. No. N12C-07-108 EMD, 2016 WL 4440477 (Del. Super. Aug. 19, 2016).

[6] *See* Letter, dated November 12, 2016, from John C. Cordrey to the Honorable Eric M. Davis, D.I. No. 1304.

2

Second, Travelers claims that certain defenses costs sought by CNH are unsubstantiated costs. CNH disagrees and contends that it has sufficient information to support the costs. Third, the parties cannot agree on whether the invoices submitted by Moran Reeves & Conn PC ("Moran Reeves") are reimbursable defense costs. Fourth, Travelers seeks production of CNH's settlement (the "CNA Settlement") with the CNA Defendants ("CNA"), a dismissed set of insurers in this case.[7] Travelers wants access to the CNA Settlement in order to determine what CNA paid as defense costs in order to establish set-off rights and prevent CNH from obtaining what Travelers considers an impermissible double recovery.

The Court held a one-day trial in this civil action on December 12, 2016. The Court then had the parties submit supplemental memoranda on equitable set-off under Wisconsin law. The Court received the final post-trial paper on December 20, 2016. This is the Court's decision after trial.

## II.  APPLICABLE LAW

Wisconsin takes a four-corners' approach to determining the duty to defend—*i.e.*, the duty to defend an insured is determined by comparing the allegations of the complaint to the terms of the insurance policy.[8] The duty to defend is based upon the nature of the claim and not the merits of the claim.[9] The duty to defend is based solely on the allegations "contained within the four corners of the complaint," without resort to extrinsic facts or evidence.[10] The allegations of the complaint are to be construed liberally because "the duty to defend is triggered by

---

[7] CNA is a group of insurance companies: Continental Insurance Company, Centre Insurance Company, as successor-in-interest to some or all of the relevant insurance obligations of London Guarantee and Accident Company, Ltd., Arrowood Indemnity Company and American Casualty Company of Reading, Pennsylvania

[8] *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 660 N.W.2d 666, 673–74 (Wis. 2003); *Smith v. Katz*, 595 N.W.2d 345, 352 (Wis. 1999).

[9] *Bradley Corp.*, 660 N.W.2d at 674.

[10] *Id.* at 673.

3

arguable, as opposed to actual, coverage."[11] The Court is to resolve any doubt regarding the duty to defend in the insured's favor.[12] An insurer will have a duty to defend even in those situations where the claim against the insured lacks merit, is groundless, or even when the claim is false or fraudulent.[13] An insurer will have a duty to defend the entire suit if even one of the claims made in the lawsuit is covered under the applicable policy.[14]

The consequences of breaching the duty to defend are substantial and an insurer who declines to defend does so at its peril.[15] Where an insurer improperly refuses to defend, it will be held to have waived any subsequent right to litigate coverage.[16] Wisconsin takes the "harsh view" that "an obligation to pay the entire settlement or judgment is the automatic consequence of a finding of a breach of the duty to defend."[17] An insurer's breach of the duty to defend constitutes "a breach of contract which renders [the insurer] liable to the insured for all damages that naturally flow from the breach."[18] "Damages which naturally flow from an insurer's breach of its duty to defend include: (1) the amount of the ... settlement against the insured plus interest; (2) costs and attorney fees incurred by the insured in defending the suit; and (3) any additional costs that the insured can show naturally resulted from the breach."[19]

In Wisconsin, breach of contract damages are only recoverable to the extent that they are established to a reasonable degree of certainty.[20] "However, such damages need not be

---

[11] *Id.* at 674.

[12] *Id.*

[13] *Id.*

[14] *Grieb v. Citizens Cas. Co.*, 148 N.W.2d 103, 108 (Wis. 1967).

[15] *Se. Wisconsin Prof'l Baseball Park Dist. v. Mitsubishi Heavy Indus. Am., Inc.*, 738 N.W.2d 87, 107 (Wis. Ct. App. 2007).

[16] *Id.*

[17] *Id.* (quoting *Radke v. Fireman's Fund Ins. Co.*, 577 N.W.2d 366, 370 (Wis. Ct. App. 1998), *overruled on other grounds*, *Marks v. Houston Cas. Co.*, 881 N.W.2d 309 (Wis. 2016)).

[18] *Newhouse by Skow v. Citizens Sec. Mut. Ins. Co.*, 501 N.W.2d 1, 6 (Wis. 1993).

[19] *Id.*

[20] *See Thorp Sales Corp. v. Gyuro Grading Co.*, 319 N.W.2d 879, 884 (Wis. Ct. App. 1982). Delaware applies the same standard for burden of proof on contract damages. *See, e.g, Frontier Oil Corp. v. Holly Corp.*, No. Civ. A. 20502, 2005 WL 1039027, at *39 (Del. Ch. 2005).

ascertainable with absolute exactness or mathematical precision."[21] The evidence is adequate if it allows the trier of fact to make a fair and reasonable approximation.[22] The party seeking damages bears the burden, by a preponderance of the evidence, of proving the damages to reasonable degree of certainty.[23]

## III.  DISCUSSION

### A.  COVERED AND UNCOVERED CLAIMS

#### i.  Travelers owed a duty to defend on the following cases.

The Court has held that Travelers' duty to defend applies to those complaints which either refer to a J.I. Case Company product or do not refer to a brand name.[24] The Court also held that Travelers' duty to defend does not apply to complaints which only refer to International Harvester, New Holland, or another non-J.I. Case Company brand.[25] The Court notes that J.I. Case Company eventually became Case Corporation in 2002 and, in 2004, Case Corporation changed its name to CNH, the plaintiff here.[26]

As stated above, the parties narrowed their dispute over covered claims to 211 of the 722 cases CNH has forwarded to Travelers. CNH, as the insured, bears the burden of proof to show that the underlying claims triggered Travelers's duty to defend. CNH provided 211 exhibits containing summonses, complaints, and other information for support.[27] The Court has reviewed all of the 211 complaints at issue.

---

[21] *Thorp Sales Corp.*, 319 N.W.2d. at 884.
[22] *See id.*; *see also Frontier Oil Corp*, 2005 WL 1039027, at *39.
[23] *See id.*
[24] *CNH Indus. Am. LLC*, 2015 WL 5016849, at *2.
[25] *Id.*
[26] *See CNH Indus. Am. LLC*, 2014 WL 626030, at *2.
[27] Affidavit of Emily Garrison in support of Plaintiff CNH Industrial America LLC's Brief in Advance of the December 12, 2016 Hearing on Remaining Disputed Issues ("Garrison Aff."). Travelers submitted its own set of supporting exhibits, including the Supplemental Expert Report of Colleen S. Vallen, CPA, CFF, Citrin Cooperman & Co., LLP, December 7, 2016 ("Vallen Report") and the Affidavit of Michael J. Gridley ("Gridley Aff."). The

5

In 200 cases,[28] the plaintiff's complaint sued CNH as "CNH America LLC, f/k/a *CASE* International Harvester"[29] or "CNH America LLC, f/k/a *CASE* New Holland North America, Inc."[30] The Court finds that these complaints do not only refer to International Harvester, New Holland, or another non-J.I. Case Company. The complaints make use of liberal notice pleading and are "short" on facts. This works in favor of CNH and against Travelers. Under Wisconsin law, the complaint and its allegations are to be construed liberally and a duty to defend is triggered by "arguable" as opposed to "actual" coverage. Moreover, the Court is to resolve any doubt regarding the duty to defend in CNH's favor. The Court finds these 200 complaints arguably are covered under the relevant policies. Accordingly, the 200 complaints triggered Travelers' duty to defend these suits.[31]

In five cases (*Carson; Devore; Meindl; Raffray;* and *Shoup*), CNH is sued individually as well as a successor-in-interest.[32] These complaints also make generalized allegations against all defendants, making it impossible for the Court to determine exactly why CNH was being sued. The complaints cannot, however, be read to refer to only International Harvester, New Holland or another non-J.I. Case Company brand. As mentioned above, J.I. Case renamed itself CNH as part of its corporate reorganization. The Court finds that these complaints are arguably covered under the Travelers' polices. As such, these five complaints also triggered Travelers's duty to defend under Wisconsin law.

---

Vallen Report and the Gridley Aff. were attached to Defendant The Travelers Indemnity Company's Brief Regarding Alleged Defense Costs ("Travelers' Defense Costs Motion") at Exs. 1 and 2.

[28] Garrison Aff. at Exs. B1–B199, B204.

[29] *See, e.g.,* Garrison Aff. at Ex. B40 (emphasis added).

[30] *Id.* at Ex B135. (emphasis added).

[31] Suits listed at Garrison Aff. at Exs. B1–B199, B204.

[32] *See* Garrison Aff. at Exs. B200–B203, B205.

6

In *Ubry*, plaintiff sued Defendant New Holland Agriculture/CNH.[33] As with the other asbestos complaints, the plaintiffs make use of notice pleading and make allegations that, arguably, support a claim against CNH regarding a J.I. Case Company product (read CNH as successor to J.I. Case Company) and/or do not refer to a brand name. In any event, *Ubry* cannot be read to refer to only International Harvester, New Holland or another non-J.I. Case Company brand. The Court finds that CNH has met its burden of proof to show that *Ubry* is covered under Wisconsin law. As such, Travelers's duty to defend is triggered.

### ii. Travelers did not owe a duty to defend on the following cases.

The Court finds that CNH has not met its burden of proof in five cases. The Court finds that two cases, *Adam* and *Reed*, did not trigger Travelers's duty to defend because CNH was neither sued individually nor as a successor to Case. In *Adam*,[34] plaintiff contended that:

> Defendant, CNH America LLC, successor to International Harvester Co., manufactured, produced, sold and/or supplied, either directly or indirectly in the geographical area in which Plaintiff worked, and/or to the employers of Plaintiff and/or to the contractors on job sites on which Plaintiff was employed, including but limited to any and all asbestos-containing products.

In *Reed*, plaintiff sued CNH America LLC as successor to International Harvester Company for the following:

> Defendant, CNH AMERICA LLC (successor to INTERNATIONAL HARVESTER COMPANY) is a corporation doing business in the Commonwealth of Pennsylvania. At all times material hereto, Defendant, CNH America LLC, manufactured, produced, sold and/or supplied, either directly or indirectly in the geographical area in which Plaintiff worked, and/or to the employers of Plaintiff and/or to the contractors on job sites on which Plaintiff was employed, asbestos-containing products, including but not limited to International Harvester Company farm equipment.[35]

---

[33] *Id.* at Ex. B210.
[34] *Id.* Ex. B206
[35] *See* Ex. B209 ¶ 4E.

7

CNH has not met its burden to show that these claims are covered by Wisconsin law. *Adam* and *Reed* do not allege liability against a J.I. Case Company product or do not refer to a brand name. The complaints, as written, refer only to International Harvester. In this context, the Court cannot read "any and all asbestos-containing products" in *Adam* or "asbestos-containing products, including but not limited to International Harvester Company farm equipment" in *Reed* to relate to any product other than an International Harvester product.

The Court also finds that CNH has not met its burden of proof to show three cases, *Cervenka, Nelson,* and *Williams,* triggered Travelers's duty to defend. In these three cases, the allegations contained in the four corners of the complaints do not mention J.I. Case Company, J.I. Case Company products, or CNH as a successor to J.I. Case Company. If submitted to Travelers, Travelers would have denied coverage as the complaints do not allege even "arguable" coverage. To support its position on December 12, 2016, CNH presented extrinsic evidence. Under Wisconsin law, however, the Court cannot consider such evidence in determining whether the duty to defend was triggered.

In *Cervenka*, J.I. Case Company, J.I. Case Company products, or CNH as a successor to J.I. Case Company are not listed in the allegations to the initial complaint filed on November 19, 2006; instead, several Does were listed.[36] CNH attached a later-dated summons January 13, 2009, that was issued to CNH America LLC.[37] CNH did not provide to the Court a copy of the purportedly later amended complaint identifying CNH America LLC.

In *Williams*, J.I. Case Company, J.I. Case Company products or CNH as a successor to J.I. Case Company are not listed in the allegations to the initial complaint.[38] Like *Cervenka*, Plaintiffs listed several Does. A later-dated summons was sent to CNH regarding Case

---

[36] *See* at Ex. B207.
[37] *See id.*
[38] *See id.* at Ex. B211.

8

Corporation. CNH did not provide to the Court a copy of the purportedly later amended complaint identifying Case Corporation.

Last, in *Nelson*,[39] CNH provided underlying plaintiffs' attorney's affidavit to a Motion to Amend its complaint. In the Affidavit, the attorney states "that upon information and belief, the Decedent, VanRobert Nelson, worked at various job locations where asbestos-containing products of Case New Holland Inc., [etc.] were used."[40] No covered entity was listed in the complaint CNH attached. Moreover, J.I. Case Company, J.I. Case Company products or CNH as a successor to J.I. Case Company are not listed in the allegations in the complaint.

Read together, coverage could be construed in CNH's favor once the underlying plaintiff found out the identity of one of the numerous Does listed in the complaints, and sued it. Wisconsin law requires a complaint and summons to be issued together.[41] Wisconsin law, however, requires the Court to only look at the complaint. No extrinsic evidence is to be considered. CNH has not attached an amended complaint for the Court's consideration. The Court has not found, nor have the parties supplied, case law suggesting that a summons comprises part of the complaint. At this point, the Court is not in a position to disregard Wisconsin's four-corners' focus. Accordingly, the Court finds that CNH has not met its burden of proof to show that *Cervenka, Nelson,* and *Williams* triggered Travelers's duty to defend.

In sum, 200 cases triggered Travelers's duty to defend because the underlying plaintiffs allege claims against Case; five cases triggered Travelers's duty to defend because CNH is listed as a defendant individually; one case triggered Travelers's duty to defend because it alleged

---

[39] Garrison Aff. Ex. B208.

[40] *Id.*

[41] WIS. STAT. 801.02(1) ("A civil action in which a personal judgment is sought is commenced as to any defendant when a summons and a complaint naming the person as defendant are filed with the court, provided service of an authenticated copy of the summons and of the complaint is made upon the defendant under this chapter within 90 days after filing.").

claims against New Holland/CNH, and the Court could not discern from reviewing the four corners which entity the underlying plaintiff sued; and five cases are not covered because CNH has not met its burden of proof to show coverage was triggered. Travelers must reimburse CNH for 206 of the 211 claims.

## B. CNH'S PAYMENTS TO MORAN REEVES ARE RECOVERABLE

The next category of costs concerns payments CNH made to Moran Reeves. Moran Reeves is an asbestos defense firm which did lead counsel and discovery work for CNH.

On September 19, 2013, CNH entered into a Flat Fee Agreement with Moran Reeves to serve as CNH's national asbestos discovery counsel.[42] CNH agreed to pay Moran Reeves $21,350/month to coordinate discovery responses.[43] CNH made its first payment under the Flat Fee Agreement on October 2013.[44] In total, CNH seeks $101,559.18 that Moran Reeves billed as part of the Flat Fee Agreement. Over the Flat Fee Agreement's lifetime, CNH paid Moran Reeves $493,450.00.[45]

CNH attached Flat Fee invoices as Exhibits E and F to the Rohrman Moran Reeves Affidavit.[46] Pursuant to the Flat Fee Agreement, Moran Reeves submitted case-specific invoices to CNH reflecting who worked on the case, what the matter entailed, the attorney's billing rate, and the hours worked.[47] CNH would then zero out that invoice, and notate that the claim was payable pursuant to the Flat Fee.[48]

---

[42] Affidavit of Diane Rohrman Regarding Moran Reeves Payments ("Rohrman Moran Reeves Aff."), Ex.A.
[43] *Id.* CNH and Moran Reeves renewed the Flat Fee Agreement in 2014 and 2015 for $22,600/month. *See id.* Ex. B.
[44] *Id.* Ex. A.
[45] *Id.* at ¶ 8.
[46] *Id.* Exs. E and F.
[47] *See id.* (Invoices associated with Flat Fee Agreement).
[48] *See id.*

10

In addition, CNH paid Moran Reeves at its hourly rates for all work, including its discovery work, on cases in which Moran Reeves was lead defense counsel.[49] CNH's Pre-Flat Fee Invoices are attached as Exhibit D to the Rohrman Moran Reeves Affidavit.[50] Moran Reeves was lead defense counsel before and after the parties entered into the Flat Fee Arrangement. CNH's Post-Flat Fee Invoices are attached as Exhibits G and H. CNH has provided a spreadsheet showing the: underlying plaintiff's name, the invoice number, the date the invoice was filed, and the amount of the invoice.[51] Additionally, CNH provided detailed invoices that matched the spreadsheets.[52] The invoices are clearly marked with the attorneys' rates multiplied by the hours worked.

As stated above, CNH can recover damages (here defense costs) that flow from the breach of the duty to defend to the extent that CNH establishes that the damages to a reasonable degree of certainty. The Court notes that CNH does not have to do this with absolute exactness or mathematical precision. The evidence is adequate if it allows the trier of fact to make a fair and reasonable approximation.[53]

CNH bears the burden to prove its damages were causally connected to a covered lawsuit. CNH provided invoices, internal payment logs, and spreadsheets for support. The Court has reviewed CNH's provided invoices. Moreover, the presentation at trial demonstrated how, through this evidence, CNH could connect Moran Reeves costs to the lawsuits. After review, the Court has determined that Travelers must reimburse CNH for all of the Moran Reeves costs. The Court is comfortable that CNH's evidence establishes, by a preponderance of

---

[49] *Id.*
[50] *Id.* at Ex. D.
[51] *Id.* (pre-Flat Fee costs); see also *id.* Ex. G (post-Flat Fee costs).
[52] *See id.* at Ex. D (Invoices for pre-Flat Fee costs); *See also id.* at Ex. H. (Invoices for post-Flat Fee costs).
[53] *See id.*; *see also Frontier Oil Corp*, 2005 WL 1039027, at *39.

11

the evidence, a clear causal connection between CNH's costs and covered cases, and that CNH did so with a reasonable degree of certainty.

## C. CNH MAY NOT RECOVER ITS UNSUBSTANTIATED COSTS

CNH also seeks reimbursement of $301,690 in unsubstantiated costs.[54] CNH admits that it does not have invoices reflecting payments.[55] Instead, CNH submitted internal payment logs, firm retention documents, and other invoices reflecting typical payments.[56] As discussed, Travelers cannot contest reasonableness.[57] However, CNH still bears the burden to prove that these fees were incurred and paid and damages that naturally flowed from Travelers' breach of its duty to defend.[58] With respect to the unsubstantiated costs, the Court—in addition to other evidence provided by the parties—extensively reviewed the Rohrman Sub. Affidavit and the Vallen Report.

The Court finds that, under Wisconsin law, these internal payment logs and other supporting documents do not suffice to support CNH's burden of proof. The Court agrees with Travelers that the documentation provided by CNH does not adequately identify the work performed, that the amount paid by CNH corresponds to the amount charged by the law firms or that the documentation related to the defense of an underlying covered lawsuit. The Court does not come to these findings using any standard of "reasonableness" of the costs. Instead, the Court focused on whether CNH proved, by a preponderance of the evidence, that the costs sought were damages that naturally flowed from Travelers' breach of its duty to defend.

---

[54] *See* Travelers's Defense Costs Motion at 19.
[55] *See id.* at 19, 21 (quoting Transcript of the Pre-Trial Conference at 34–35 (Nov. 14, 2016)).
[56] *See* Affidavit of Diane Rohrman Regarding Substantiated Defense Costs ("Rohrman Sub. Aff."), Exs. 3A–3TT.
[57] *Se. Wisconsin Prof'l Baseball Park Dist.*, 738 N.W.2d at 107.
[58] *Id.* at 110.

## D. TRAVELERS IS NOT ENTITLED TO THE CNA SETTLEMENT

CNH initiated this coverage action against a litany of insurers, initially focusing on its two groups of insurers: CNA and Travelers. On April 22, 2014, CNH and CNA entered into the CNA Settlement.[59] On July 7, 2014, CNH and CNA submitted a joint stipulation to dismiss CNA.[60] Travelers has, on a number of occasions, moved for the production of the CNA Settlement. Presently, Travelers argues that it is entitled to the CNA Settlement and "any other settlement and payment documentation, so that it can adequately evaluate its right to a set-off or other relief."[61] Travelers contends that it may be able to recoup defense costs paid by Travelers to CNH from CNA. Travelers claims that set-off is necessary to prevent CNH from obtaining an "improper double recovery," which Wisconsin law disfavors.

Generally, setoffs are equitable counterclaims against a plaintiff used to reduce a defendant's damages by an amount plaintiff already owes defendant arising from an independent transaction or claim.[62] Setoffs, equitable in nature, are unavailable when the parties have entered into a contract.[63] If the parties' relationship is governed by contract, then the Court must look to the contract to determine appropriate remedies.[64]

Travelers does not refer the Court to any contractual provision granting its setoff remedy. Instead, Travelers argues that Wisconsin law expressly disfavors double recovery by a plaintiff.[65] For example, Travelers cites *Heifetz v. Johnson*[66] and *Lamphier v. Ferber*[67] for support. Both

---

[59] D.I. 432.

[60] D.I. 493 (Joint Stipulation and (Proposed) Order Dismissing CNA Defendants with Prejudice). The Court signed the Stipulation of Dismissal on July 15, 2014 (D.I. 499).

[61] Defendant The Travelers Indemnity Company's Brief Regarding Production of all Documents Concerning Settlements with and Payments from Other Insurers ("Travelers's Settlement Brief") at 2.

[62] *Gronik v. Balthasar*, 118 F.Supp.3d 1106, 1108 (E.D. Wis. 2015).

[63] *Id.* at 1109 (citing *Meyer v. The Laser Vision Institute*, 714 N.W.2d 223, 231 (Wis. Ct. App. 2006)).

[64] *Gronik*, 118 F.Supp.3d at 1109.

[65] Travelers's Settlement Brief at 8.

[66] 211 N.W.2d 834 (Wis. 1973)

[67] 703 N.W.2d 384, 2005 WL 1431954 (Wis. Ct. App. Jun. 21, 2005) (TABLE).

cases are distinguishable. *Heifetz* and *Lamphier* deal with personal injury claims and the insurer's right of subrogation.

While Travelers is correct that Wisconsin's public policy disfavors double recovery by an injured party, this case is different. This is not a personal injury action. This is a breach of contract action for CNH's insurers' breach of their collective duty to defend. The case that seems to address the issue is *Burgraff v. Menard, Inc.*[68] The holding in this case makes it clear that the CNA Settlement is not relevant here and need not be produced to Travelers.

*Burgraff* is a recent decision by the Supreme Court of Wisconsin. *Burgraff* involves a case where an insurer breached its duty to defend and, later, sought to have any defense cost damage award prorated between the breaching insurer and the other entity that provided a defense—in that instance a self-insurer. The *Burgraff* court first looked to see if the insurer had a provision providing for proration of defense costs in the event the insured had more than one insurer providing a defense. Because there was no such provision in the policy, the *Burgraff* court declined to prorate defense costs on a contractual basis. Moreover, the *Burgraff* court refused to apply the doctrine of equitable contribution in favor of the insurer.[69] In coming to this decision, the *Burgraff* court held that equitable contribution, a form of offset, is not available to an insurer in a case where the insurer has breached its duty to defend.[70] Wisconsin's rationale is to not reward an insurer for refusing to honor its duty to defend by allowing it access to theories like equitable contribution and alike.

Under Wisconsin law, therefore, when an insurer breaches its duty to defend, it is not entitled to proration of defense costs in the absence of a contractual right under the relevant policy. In addition, the insurer is not entitled to proration of defense costs under the doctrine of

---

[68] 875 N.W.2d 596 (Wis. 2016).
[69] *Burgraff*, 875 N.W.2d at 610.
[70] *See id.*

14

equitable contribution. Travelers has not cited the Court to any contractual provision that would provide for a proration of defense costs. Moreover, Travelers, under Wisconsin law, would not be allowed to pursue equitable contribution from either CNH or CNA. Therefore, the Court does not see how the information in the CNA Settlement is relevant as to Travelers. Accordingly, the Court will not require CNH or CNA to produce the CNA Settlement to Travelers.

## IV.    CONCLUSION

As set forth more fully above, the Court finds and holds:

(a)    Travelers owes defense costs for the 206 cases discussed in Section III.A.i.;

(b)    Travelers does not owe defense costs for the five cases discussed in Section III.A.ii;

(c)    CNH is entitled to recover all fees billed by Moran Reeves;

(d)    CNH is not entitled to recover for the $301,690 in unsubstantiated costs; and

(e)    Travelers request to produce the CNA Settlement is DENIED.

**IT IS SO ORDERED.**

Eric M. Davis, Judge